# No. 24-1693

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

WBI Energy Transmission,
*Plaintiff-Appellant,*

v.

189.9 rods, more or less, located in Township 149 North, Range 98 W Section 11:
W1/2SE1/4 Section 14: NW1/4NE1/4 McKenzie County, North Dakota, an
easement and right-of-way across, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of North Dakota
The Honorable District Court Judge Daniel L. Hovland
Case No. 1:18-cv-00078-DLH-CRH

## BRIEF OF PLAINTIFF-APPELLANT

Paul J. Forster
CROWLEY FLECK PLLP
100 West Broadway, Suite 100
Bismarck, North Dakota 58501
(701) 223-6585
*Attorneys for Plaintiff-Appellant*

# SUMMARY OF THE CASE &
## STATEMENT REGARDING ORAL ARGUMENT

WBI Energy Transmission, Inc. ("WBI Energy") initiated the underlying action seeking condemnation of pipeline easements across lands owned by Defendants-Appellees (collectively the "Hoffmanns"), pursuant to the Natural Gas Act, 15 U.S.C. § 717f(h). The parties stipulated to WBI Energy's immediate use and possession of the easements but proceeded to trial on the issue of just compensation. During trial, the parties reached a settlement as to just compensation for the pipeline easements, but they reserved the issue of attorney's fees and expenses.

The Hoffmanns then moved for attorney's fees and expenses, arguing that a gap existed in federal law such that the court should award attorney's fees under North Dakota law. WBI Energy opposed the motion, arguing: (1) the Federal Relocation Act, 42 U.S.C. § 4654(a), applies to Natural Gas Act condemnations and forecloses the Hoffmanns' request for fees and expenses; (2) Supreme Court precedent requires application of the American Rule when interpreting federal statutes, such that parties may not recover attorney's fees absent an express fee shifting provision; and (3) even if there were a gap in the federal statutory scheme, federal common law applies and forecloses an award of fees in a condemnation brought under federal law. The District Court granted the Hoffmanns' motion, concluding the Hoffmanns were entitled to attorney's fees under North Dakota law.

WBI Energy respectfully requests twenty minutes of oral argument.

i

# CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1A of the Eighth Circuit Rules of Appellate Procedure, Plaintiff-Appellant WBI Energy Transmission, Inc., states that it is an indirect, wholly-owned subsidiary of MDU Resources Group, Inc. MDU Resources Group, Inc. is publicly traded on the New York Stock Exchange.

# TABLE OF CONTENTS

SUMMARY OF THE CASE & STATEMENT REGARDING ORAL ARGUMENT. ........................................................................... i

CORPORATE DISCLOSURE STATEMENT ...................................... ii

TABLE OF CONTENTS .................................................................... iii

TABLE OF AUTHORITIES ................................................................ v

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF ISSUES ................................................................. 2

STATEMENT OF THE CASE ............................................................. 3

    I.     Background Facts .................................................................. 3

    II.    Procedural History ............................................................... 5

SUMMARY OF ARGUMENT ............................................................. 6

ARGUMENT .................................................................................... 8

    I.     Standard of Review. .............................................................. 8

    II.    Because federal law answered the question and foreclosed an award of attorney's fees or costs, the District Court erred in looking to state law for the rule of decision. .......................... 9

        a.    The *Kimbell Foods* analysis only applies where there is a gap in federal law. ........................................................ 9

        b.    The federal Relocation Act applies to Natural Gas Act condemnations and expressly supplies the standard for recovering attorney's fees or other litigation expenses, foreclosing an award to the landowners here. .................... 12

        c.    Independently, Supreme Court precedent requires federal courts to apply the American Rule to federal statutes, such

that attorney's fees may not be awarded absent express fee-shifting provisions. ...........................................................15

    d.    The line of cases upon which the District Court relied are not persuasive, particularly in the context of attorney's fees. ..19

    e.    Two recent cases awarding attorney's fees in Natural Gas Act cases failed to consider either the Relocation Act or the controlling precedent that imposes the American Rule on claims arising under federal laws.............................................22

III.    If there is a gap in the federal statutory scheme, federal law applies and forecloses an award of litigation expenses...................................26

    a.    Supreme Court precedent directs application of federal law and forecloses an award of attorney's fees or other litigation expenses. .................................................................................26

    b.    In the alternative, the *Kimbell Foods* factors weigh in favor of applying federal law. ..........................................................29

CONCLUSION........................................................................................34

CERTIFICATE OF COMPLIANCE.......................................................36

CERTIFICATE OF SERVICE ...............................................................37

# TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*Advantage Media, L.L.C. v. City of Hopkins, Minn.*,
  511 F.3d 833 (8th Cir. 2008) ..........................................................8

*Alliance Pipeline L.P. v. 4.360 Acres of Land*,
  746 F.3d 362 (8th Cir. 2014) ........................................................22

*Alyeska Pipeline Service Co. v. Wilderness Society*,
  421 U.S. 240 (1975).......................................................................16

*Atl. Coast Pipeline, Inc. v. 1.51 Acres*,
  No. 5:18-CV-127-BO, 2021 WL 535469 (E.D.N.C. Feb. 12, 2021)............19

*Atl. Coast Pipeline, LLC v. 3.13 Acres*,
  No. 4:18-CV-35-BO, 2021 WL 3236589 (E.D.N.C. July 29, 2021) ......14, 30

*Atl. Coast Pipeline, LLC v. 3.92 Acres*,
  No. 5:18-CV-258-BO, 2021 WL 102186 (E.D.N.C. Jan. 12, 2021).............14

*Baker Botts L.L.P. v. ASARCO LLC*,
  576 U.S. 121 (2015)........................................................2, 7, 15, 16

*Cass Cty. Joint Water Res. Dist. v. Erickson*,
  918 N.W.2d 371 (N.D. 2018) .........................................................29

*C.D. Barnes Associates, Inc. v. Grand Haven Hideaway Ltd. Partnership*,
  406 F. Supp. 2d 801 (W.D. Mich. 2005).........................................10

*Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement*,
  962 F.2d 1192 (6th Cir. 1992) ............................................21, 28, 34

*Design Pallets, Inc. v. Gray Robinson, P.A.*,
  583 F. Supp. 2d 1282 (M.D. Fla. 2008) ..........................................17

*Dohany v. Rogers*,
  281 U.S. 362 (1930)........................................................................17

*Emergency Medical Services, Inc. v. St. Paul Mercury Ins. Co.*,
    495 F.3d 999 (8th Cir. 2007) ...........................................................8

*Gates v. Central States Teamsters Pension Fund*,
    788 F.2d 1341 (8th Cir. 1986) ......................................................1

*Georgia Power Co. v. Sanders*,
    617 F.2d 1112 (5th Cir. 1980) .................................................*passim*

*Guardian Pipeline, L.L.C. v. 950.80 Acres of Land, No. 01 C 4696*,
    2002 WL 1160939 (N.D. Ill. May 30, 2002)................................28

*Home Sav. Bank by Resol. Tr. Corp. v. Gillam*,
    952 F.2d 1152 (9th Cir. 1991) ......................................16, 29, 32

*Irick v. Columbia Gas Transmission Corp.*,
    No. 5:07cv00095, 2008 WL 191324 (W.D. Va. Jan. 22, 2008)...................19

*Jacobson Warehouse Co., Inc. v. Schnuck Markets, Inc.*,
    13 F.4th 659 (8th Cir. 2021) ..........................................................8

*McNabb v. Riley*,
    29 F.3d 1303 (8th Cir. 1994) ......................................................16

*Millennium Pipeline Co., L.L.C.  v. Acres of Land, Inc.*,
    No. 07-CV-6511L, 2015 WL 6126949 (W.D.N.Y. Oct. 16, 2015) .............18

*Mississippi River Transmission Corp. v. Tabor*,
    757 F.2d 662 (5th Cir. 1985) ......................................................21

*Modzelewski v. Resol. Tr. Corp.*,
    14 F.3d 1374 (9th Cir. 1994) .................................................17, 32

*Monongahela Navigation Co. v. United States*,
    148 U.S. 312 (1893)....................................................................17

*Northern Nat. Gas Co. v. Approximately 9117 Acres*,
    114 F. Supp. 3d 1144 (D. Kan. 2015) ..........................................18

*Northern Nat. Gas Co. v. L.D. Drilling*,
862 F.3d 1221 (10th Cir. 2017) .....................................................18

*Peter v. Nantkwest, Inc.*,
589 U.S. 23, 31 (2019) ..................................................................16

*Sabal Trail Transmission v. 18.27 Acres of Land in Levy County*,
59 F.4th 1158 (11th Cir. 2023) ...............................................*passim*

*Sabal Trail Transmission, LLC v. 3.921 Acres of Land in Lake County Florida*,
74 F.4th 1346 (11th Cir. 2023) ...............................................*passim*

*St. Louis Effort for AIDS v. Lindley-Myers*,
877 F.3d 1069 (8th Cir. 2017) ........................................................8

*Sunray Mid-Con. Oil Co. v. Fed. Power Comm'n*,
364 U.S. 137 (1960)......................................................................32

*Tennessee Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*,
No. 3:CV-11-028, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014) .............27, 28

*Tennessee Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*,
931 F.3d 237 (3d Cir. 2019) ...................................................*passim*

*Transwestern Pipeline Co., LLC v. 17.19 Acres*,
627 F.3d 1268 (9th Cir. 2010) .......................................................14

*United States v. 410.69 Acres*,
608 F.2d 1073 (5th Cir. 1979) .......................................................13

*United States v. Bodcaw*,
440 U.S. 202 (1979)...............................................................*passim*

*United States v. Great Plains Gasification Associates*,
813 F.2d 193 (8th Cir. 1987) ........................................2, 10, 11, 15

*United States v. Kimbell Foods, Inc.*,
440 U.S. 715 (1979)...............................................................*passim*

*United States v. Miller*,
  317 U.S. 369 (1943).....................................................................2, 24, 27, 28

*United States v. Thornburg,*
  82 F.3d 886 (9th Cir. 1996) .............................................................10

*Williston Basin Interstate Pipeline Co. v. Property Interests Necessary to*
*Conduct Gas Storage Operations*,
  No. CV-09-167-BLG-RFC, 2010 WL 5104991(D. Mont. Dec. 9, 2010).....18

## Statutes

18 C.F.R. § 157.205 .......................................................................4

18 C.F.R. § 157.210 .......................................................................4

36 C.J.S. Federal Courts § 189(5) (1960) ............................................31

15 U.S.C. § 717a(6) .......................................................................3

15 U.S.C. § 717(c) ........................................................................31

15 U.S.C. § 717f(h)...................................................................*passim*

28 U.S.C. § 1291 ..........................................................................1

28 U.S.C. § 1331 ..........................................................................1

42 U.S.C. ch. 61 .......................................................................7, 12

42 U.S.C. § 4601 ......................................................................12, 30

42 U.S.C. § 4654(a) ..............................................................2, 7, 13, 14

## Other Authorities

Fed. R. Civ. P. 71.1 ................................................................18, 22, 31

Uniform Relocation Act Amendments of 1987, Pub. L. No. 100–17, § 402, 101 Stat. 132, 246 ...........................................................................12

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over the Complaint pursuant to 28 U.S.C. § 1331, because the cause of action arose under the laws of the United States, as an eminent domain action brought under the Natural Gas Act, 15 U.S.C. § 717f(h). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, because the appeal stems from a final appealable judgment entered by the District Court on March 5, 2024. *See Gates v. Central States Teamsters Pension Fund*, 788 F.2d 1341, 1343 (8th Cir. 1986) (holding an award of attorney's fees is not final and appealable until the court determines the amount of that award). WBI Energy filed a timely Notice of Appeal on April 1, 2024.

# STATEMENT OF ISSUES

1.    Did the District Court err in holding that landowners can recover attorney's fees and costs in an eminent domain action under the Natural Gas Act, 15 U.S.C. § 717f(h), where the Natural Gas Act lacks any fee-shifting provision and the landowners do not qualify to recover their attorney's fees and other litigation expenses under the applicable statutory scheme for federal condemnations, as set forth in the Relocation Act, 42 U.S.C. § 4654(a)?

**Apposite Cases and Statutes**
15 U.S.C. § 717f(h)
42 U.S.C. § 4654(a)
*United States v. Great Plains Gasification Associates*, 813 F.2d 193 (8th Cir. 1987)
*Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121 (2015)

2.    Alternatively, if there is a gap in the Natural Gas Act, did the District Court err in holding that the *Kimbell Foods* factors weigh in favor of applying state law to the request for attorney's fees and costs?

**Apposite Cases**
*United States v. Miller*, 317 U.S. 369 (1943)
*United States v. Bodcaw,* 440 U.S. 202 (1979)
*United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979)

<u>**STATEMENT OF THE CASE**</u>

## I.    Background Facts

WBI Energy Transmission, Inc. ("WBI Energy"), is a full-service interstate natural gas transmission, gathering, and storage company within the meaning of the Natural Gas Act, 15 U.S.C. § 717a(6), operating under the jurisdiction of the Federal Energy Regulatory Commission ("FERC").   App. 042; R. Doc. 5, at ¶ 3.   WBI Energy, or its affiliate company, Montana-Dakota Utilities Co., has been in the pipeline business for more than seventy-five years.  *Id*. at ¶ 5.  Currently, WBI Energy operates thousands of miles of transmission pipelines and dozens of compressor stations.  *Id.*

On February 13, 1985, FERC issued to WBI Energy a Certificate of Public Convenience and Necessity authorizing it to acquire and operate the interstate pipeline facilities previously owned and operated by its affiliate Montana-Dakota Utilities Co. ("MDU"), as well as to provide the certificated service previously provided by MDU, including a blanket certificate authorizing routine activities.  The Certificate authorized MDU to perform the activities specified in Subpart F of Part 157 of the Commission's Regulations, as amended from time to time, including the construction, acquisition, and operation of facilities for the transportation and storage of natural gas.

On November 30, 2017, pursuant to a Certificate of Public Convenience and Necessity, WBI Energy filed a prior notice request for authorization, in accordance with 18 C.F.R. Sections 157.205 and 157.210, to construct and operate a natural gas pipeline, known as the Line Section 27 Cherry Creek to Spring Creek Expansion Project ("Line Section 27" or "Project"). App. 009; R. Doc. 1-9. Line Section 27 runs through a portion of McKenzie County, North Dakota. On December 11, 2017, FERC issued a notice of authorization under blanket certificate for WBI Energy's request. App. 022; R. Doc. 1-10.

To construct, operate, and maintain the Project, WBI Energy required a strip of land fifty feet in width, with land outside the easement for construction purposes, together with temporary workspace, and any necessary rights of ingress and egress. App. 044; R. Doc. 5, at ¶ 15. WBI Energy was able to purchase a majority of the rights-of-way necessary for construction and operation of the Project. App. 045; R. Doc. 5, at ¶ 16. WBI Energy made several good-faith attempts to acquire by contract pipeline easements across lands owned by the Hoffmanns (the "Subject Easements"), but the parties failed to reach an agreement. As a result, WBI Energy filed this action to exercise the right of eminent domain under the Natural Gas Act, 15 U.S.C. § 717f(h).

## II.    Procedural History

On April 16, 2018, WBI Energy filed its complaint, requesting the court condemn easements in favor of WBI Energy, grant WBI Energy immediate use and possession of the easements while the action was pending, and order just compensation to be awarded to the Hoffmanns.  App. 006; R. Doc. 1, at 6.  WBI Energy then moved for partial summary judgment on its right to take the Subject Easements and requested immediate use and possession of the Subject Easements. App. 025; R. Doc. 3, at 2.  By stipulation of the parties, the District Court granted the motion on May 7, 2018, determining WBI Energy had a right under the Natural Gas Act to take the Subject Easements and granting WBI Energy possession of the Subject Easements on the terms requested in the complaint.  App. 052; R. Doc. 19. The only remaining issue was the amount of just compensation owed to the Hoffmanns.

The case proceeded to a bench trial on April 26, 2021.  On the second day of trial, the parties reached a confidential settlement agreement on the amount of just compensation.  App. 146; R. Doc. 108.  The District Court entered a Judgment of Condemnation, dismissing with prejudice the Hoffmanns' claims for just compensation, while providing that the Hoffmanns reserved the right to file a motion seeking recovery of attorney's fees and other expenses and WBI Energy reserved the right to contest any such motion.  App. 156-157; R. Doc. 115, at 2–3.  On August

12, 2021, the Hoffmanns moved for attorney's fees and expenses.  App. 165-182; R. Doc. 118–119.  WBI Energy opposed the motion, filing briefs in opposition to the award of attorney's fees or other litigation expenses.  App. 183-201, 214-218; R. Doc. 120, 130.  On November 1, 2022, the District Court granted the Hoffmanns' motion for attorney's fees and expenses and ordered briefing on the amount of attorney's fees and expenses.  App. 247; R. Doc. 131, at 15; Add. 015.  On March 5, 2024, following the further briefing, the District Court entered an order and judgment awarding attorney's fees and expenses.  App. 248-255; R. Doc. 142–143; Add. 016 - 023.  WBI Energy filed its notice of appeal on April 1, 2024.  App. 256; R. Doc. 144.

## SUMMARY OF ARGUMENT

The District Court erred in applying state law and awarding attorney's fees and expenses to the Hoffmanns.  WBI Energy condemned pipeline easements under federal law—specifically, the Natural Gas Act, 15 U.S.C. § 717f(h).  The federal statutory scheme does not contain a gap that could permit a court to apply state law to determine a landowner's entitlement to litigation expenses.  In fact, the Uniform Relocation Assistance and Real Property Acquisition Policies for Federal and Federally Assisted Programs Act (the "Relocation Act"), explicitly answers the question.  The Relocation Act is a federal statute that provides standards for federal programs requiring the acquisition or condemnation of real property.  *See generally*

42 U.S.C. ch. 61. As such, the Relocation Act applies to Natural Gas Act condemnations and only permits recovery of litigation expenses in two narrow circumstances, neither of which apply here. *See* 42 U.S.C. 4654(a). Moreover, even if the Relocation Act did not control, the Supreme Court has held that the American Rule applies when interpreting federal statutes. As such, each litigant pays their own attorney's fees "absent explicit statutory authority" to the contrary. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015). In other words, the absence of a fee-shifting provision in a federal statute does not imply a gap in federal law, but rather indicates that Congress intended that each litigant bear their own attorney's fees. The District Court erred in finding a gap in the federal statutory scheme and applying state law.

Alternatively, even if a gap existed in the federal statutory scheme, Supreme Court precedent likewise dictates that attorney's fees and expenses are not part of just compensation owed to landowners in federal condemnations. *United States v. Bodcaw Co.*, 440 U.S. 202, 203 (1979). In the alternative, the gap-filling *Kimbell Foods* factors likewise favor applying the federal rule to requests for attorney's fees and costs. *See United States v. Kimbell Foods, Inc*., 440 U.S. 715 (1979). The cases on which the District Court relied in support of its *Kimbell Foods* analysis focus on application of state property laws to the measure of just compensation such that their reasoning does not extend to questions of attorney's fees or litigation expenses. In

fact, those cases do not even consider the fee-shifting provisions of the Relocation Act or the Supreme Court precedent mandating application of the American Rule to federal statutes. As such, the District Court erred in awarding the Hoffmanns attorney's fees and costs.

## **ARGUMENT**

## I.     **Standard of Review.**

The Eighth Circuit reviews "the legal issues related to the award of attorney fees" de novo. *Advantage Media, L.L.C. v. City of Hopkins, Minn*., 511 F.3d 833, 836 (8th Cir. 2008). *See also Jacobson Warehouse Co., Inc. v. Schnuck Markets, Inc*., 13 F.4th 659, 680 (8th Cir. 2021). Whether a statute permits an award of attorney's fees is a legal issue related to the award of attorney's fees. *See Emergency Medical Services, Inc. v. St. Paul Mercury Ins. Co.*, 495 F.3d 999, 1009 (8th Cir. 2007) ("Whether such [attorney's] fees are appropriate under a particular statute, however, is a question of law, which we review de novo."). *See also St. Louis Effort for AIDS v. Lindley-Myers*, 877 F.3d 1069, 1071 (8th Cir. 2017). Thus, whether the District Court erred in concluding the Hoffmanns were entitled to attorney's fees is reviewed by this Court de novo.

**II.  Because federal law answered the question and foreclosed an award of attorney's fees or costs, the District Court erred in looking to state law for the rule of decision.**

The *Kimbell Foods* analysis upon which the District Court relied only applies when a gap exists in the federal statutory scheme.  Here, there is no gap in the law, because the federal Relocation Act applies to Natural Gas Act condemnations and expressly supplies the standard for recovering attorney's fees and other expenses, foreclosing an award to the Hoffmanns.  Independently, Supreme Court precedent requires federal courts to apply the American Rule to federal statutes, such that attorney's fees may not be awarded absent express fee-shifting provisions.  Moreover, the cases upon which the District Court relied, and upon which the Hoffmanns are likely to rely, are not persuasive because none of them address these dispositive points.

> a.  *The Kimbell Foods analysis only applies where there is a gap in federal law.*

This Action arises under the Natural Gas Act, which delegates to WBI Energy the federal government's condemnation authority and thus requires "just compensation" to the Hoffmanns under the Fifth Amendment to the United States Constitution.  *See* 15 U.S.C. § 717f(h).  None of the claims in this case arise under state law.  As such, the District Court was required to apply the federal statutory scheme as the rule of decision in this case, insofar as it answers the question.

*United States v. Kimbell Foods, Inc.* developed a test "to fill the interstices of federal legislation" when Congress has not spoken. 440 U.S. at 727. Specifically, *Kimbell Foods* analyzed whether state or federal law should determine the priority of liens when the applicable federal statute was silent on the issue of priority. *Id.* at 718. To answer the question, the Supreme Court formulated a multi-factor test to determine "[w]hether to adopt state law or to fashion a nationwide federal rule." *Id.* at 728.[1]

The *Kimbell Foods* test exists only to fill gaps in federal law. *See, e.g.*, *United States. v. Great Plains Gasification Associates*, 813 F.2d 193, 195 (8th Cir. 1987) ("Since there is a congressional directive, *Kimbell Foods* is inapplicable."). If no gap exists, the test does not apply. *See United States v. Thornburg,* 82 F.3d 886, 893 (9th Cir. 1996) (the plaintiff's "reliance on *Kimbell Foods* is misplaced. . . . Congress has left no gap in the law concerning the right of the United States to foreclose on a mortgage without being subject to a limitation period."); *see also C.D. Barnes Associates, Inc. v. Grand Haven Hideaway Ltd. Partnership*, 406 F. Supp. 2d 801, 809 (W.D. Mich. 2005) ("This Court is not faced with a situation in which Congress has not spoken with regard to the applicable rule of priority. Thus, this Court need not consider the *Kimbell Foods* factors.").

---

[1] Section III(b) below addresses the *Kimbell Foods* factors.

Before a court may reach the *Kimbell Foods* test, it must "determine that there exists a gap in the statutory scheme," as recognized by one of the cases cited by the District Court. *Tennessee Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237, 247 (3d Cir. 2019). Even where "Congress did not specifically address" the issue at hand, "*Kimbell Foods* is inapplicable" if a federal statute "does provide sufficient direction for a decision." *Great Plains Gasification,* 813 F.2d at 195. *Great Plains Gasification*, for instance, declined to apply a right of redemption under North Dakota law where "Congress has not explicitly dealt with redemption rights of loans guaranteed under the Act[2] but it has provided the procedure to be followed upon default." *Id.* at 196. The Eighth Circuit reasoned that "the language of the Act would be rendered superfluous if North Dakota law were to apply." *Id.* Thus, courts should not reach the *Kimbell Foods* analysis unless they first determine that a gap exists in the federal statutory scheme. As explained below, no such gap exists concerning the award of litigation expenses in an eminent domain action brought under federal law.

---

2 *Great Plains Gasification* dealt with a default on a loan guaranteed pursuant to the Federal Nonnuclear Energy Research and Development Act. *See* 813 F.2d at 194.

b.     *The federal Relocation Act applies to Natural Gas Act condemnations and expressly supplies the standard for recovering attorney's fees or other litigation expenses, foreclosing an award to the landowners here.*

The Natural Gas Act does not expressly address recovery of attorney's fees or expenses, but the Relocation Act does. The Relocation Act is a federal statute that provides standards for federal programs requiring the acquisition and condemnation of real property. *See generally* 42 U.S.C. ch. 61. In 1987, Congress amended the definition of "Federal agency" in the Relocation Act to include private actors granted the power of eminent domain. *See* Uniform Relocation Act Amendments of 1987, Pub. L. No. 100–17, § 402, 101 Stat. 132, 246. Following the amendment, the statute defines "Federal agency" to include not only the federal government but also "any person who has the authority to acquire property by eminent domain under Federal law." 42 U.S.C. § 4601(1). In turn, the statute defines "person" to mean "any individual, partnership, corporation, or association." *Id*. § 4601(5). As a result, certain provisions of the Relocation Act now apply to condemnations under the Natural Gas Act, which grants certain companies eminent domain authority under federal law. *See* 15 U.S.C. § 717f(h). Though the Relocation Act was extensively briefed in the proceedings below, the District Court's order wholly ignored this statute.

Through the Relocation Act, Congress has defined two narrow circumstances in which a landowner may recover attorney's fees and expenses in federal condemnations. The statute provides:

### § 4654 Litigation expenses

(a) Judgment for owner or abandonment of proceedings

The Federal court having jurisdiction of a proceeding instituted by a Federal agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if—

(1) the final judgment is that the Federal agency cannot acquire the real property by condemnation; or

(2) the proceeding is abandoned by the United States.

42 U.S.C. § 4654(a). Thus, the Relocation Act expressly defines two limited situations in which landowners may recover litigation expenses in condemnations arising under federal law. "Congress intended to create only a narrow exception to the general rule of nonrecovery for litigation expenses in condemnation cases," and "legislative history of the [Relocation] Act supports a restrictive reading of the statute." *United States v. 410.69 Acres*, 608 F.2d 1073, 1076 (5th Cir. 1979). Recovery of litigation expenses under the Relocation Act "is a matter of legislative grace rather than constitutional command." *Bodcaw*, 440 U.S. at 204. Thus, a

landowner in a Natural Gas Act condemnation may recover litigation expenses only if "the final judgment is that the Federal agency cannot acquire the real property by condemnation." 42 U.S.C. § 4654(a)(1).[3]

Not surprisingly, federal courts have applied the litigation expenses provision of the Relocation Act to Natural Gas Act condemnations. *See, e.g., Transwestern Pipeline Co., LLC v. 17.19 Acres*, 627 F.3d 1268 (9th Cir. 2010); *Atl. Coast Pipeline, LLC v. 3.13 Acres*, No. 4:18-CV-35-BO, 2021 WL 3236589, at *1–2 (E.D.N.C. July 29, 2021). This line of cases recognizes that "[i]n condemnation cases, the general rule is that litigation expenses are nonrecoverable, but Congress created a narrow exception to that rule when it enacted the [Relocation Act]." *3.13 Acres*, 2021 WL 3236589, at *1; *accord Atl. Coast Pipeline, LLC v. 3.92 Acres*, No. 5:18-CV-258-BO, 2021 WL 102186, at *1 (E.D.N.C. Jan. 12, 2021).

Here, the Hoffmanns do not qualify for recovery of litigation expenses under the conditions defined by the Relocation Act, because WBI Energy acquired the property at issue under a Judgment of Condemnation entered by the Court. *See* App. 155; R. Doc. 115. Moreover, as in *Great Plains Gasification*, "the language of the [Relocation Act] would be rendered superfluous if North Dakota law were to apply," because the North Dakota Rule would allow the Hoffmanns to recover fees and

---

[3] Subsection 4654(a)(2) applies only to proceedings by the "United States," whereas subsection 4654(a)(1) applies to proceedings brought by any broadly-defined "Federal agency."

expenses regardless of whether they meet the conditions defined by Congress in the Relocation Act. 813 F.2d at 196. As such, the federal statutory scheme "does provide sufficient direction for a decision in this case" and this Court, therefore, "need not reach" the *Kimbell Foods* test. *Id.* at 195. The District Court erred in concluding that a gap exists in the federal statutory scheme, because the Relocation Act governs and forecloses an award of attorney's fees or other litigation expenses to the Hoffmanns.

c. *Independently, Supreme Court precedent requires federal courts to apply the American Rule to federal statutes, such that attorney's fees may not be awarded absent express fee-shifting provisions.*

The Supreme Court has enunciated a rule of statutory construction peculiar to attorney's fees. As described by the Supreme Court, "Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts*, 576 U.S. at 126 (citation omitted) (reversing fee award). The American Rule has roots in American common law dating to at least the 18th century, and statutes that invade the common law are to be read with a presumption favoring the retention of long-established and familiar legal principles. *Id.* As such, claims arising under a federal statute do not allow recovery of fees unless the statute contains a fee-shifting provision: courts "will not deviate from the American Rule absent ***explicit*** statutory authority." *Id.* (emphasis

added, internal quotation marks and citations omitted); *accord McNabb v. Riley*, 29 F.3d 1303, 1306 (8th Cir. 1994) (holding that statute allowing "costs" did not allow recovery of fees and noting that federal fee-shifting statutes "all have one feature in common—they ***expressly*** authorize an award of attorney's fees" (emphasis in original)). The "mere failure to foreclose a fee award 'neither specifically nor explicitly authorizes courts to shift [fees].'" *Peter v. Nantkwest, Inc.*, 589 U.S. 23, 31 (2019) (alteration in original) (quoting *Baker Botts*, 576 U.S. at 128). In other words, "the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine."[4] *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 262 (1975) (seminal case holding American Rule governs claims arising under federal statutes).

This precedent forecloses federal courts hearing federal claims from looking to state laws on attorney's fees as an end-run around the American Rule, because federal precedent "disfavors the award of attorney's fees in federal question cases absent an express congressional directive." *Home Sav. Bank by Resol. Tr. Corp. v. Gillam*, 952 F.2d 1152, 1162 (9th Cir. 1991) (reversing fee award based on Alaska

---

[4] Courts also have inherent authority to award fees pursuant to the common fund doctrine or in connection with sanctions. *Alyeska Pipeline*, 421 U.S. at 258–59. But neither of those scenarios are at issue here.

law in a federal claim). A number of federal courts have thus rejected attempts to apply state attorney's fees laws to federal claims. *See, e.g.*, *Modzelewski v. Resol. Tr. Corp.*, 14 F.3d 1374, 1379 (9th Cir. 1994) ("[S]ince we address federal, not state claims, the federal common law of attorney's fees, and not Arizona law, is the relevant authority."); *Design Pallets, Inc. v. Gray Robinson, P.A.*, 583 F. Supp. 2d 1282, 1287 (M.D. Fla. 2008) (denying request for fees under state law and holding "[o]nly Congress may create exceptions to the American Rule where federal claims are at issue").

Concerning federal condemnation cases specifically, just compensation does not include attorney's fees or other litigation costs. In defining just compensation, the Supreme Court has consistently held that just compensation "is for the property, and not to the owner." *Bodcaw*, 440 U.S. at 203 (quoting *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 326 (1893)). As a result, "indirect costs" such as attorney's fees and expenses "are not embraced within just compensation." *Bodcaw*, 440 U.S. at 203 (quoting *Dohany v. Rogers*, 281 U.S. 362, 368 (1930)). Likewise, "appraisal expenses [are] not part of the 'just compensation' required by the Fifth Amendment." *Bodcaw*, 440 U.S. at 204. Congress first enacted the Natural Gas Act in 1938, eight years after *Dohany* first held that attorney's fees and expenses are not embraced within just compensation, and Congress amended the Natural Gas Act ten years after the Supreme Court reiterated that rule in *Bodcaw*. Had Congress

intended that litigation expenses be recoverable in Natural Gas Act condemnations, it would have included fee-shifting provisions.

In Natural Gas Act cases, federal courts around the country have relied on the above principles in reasoning that landowners cannot recover litigation expenses. *See, e.g.*, *Northern Nat. Gas Co. v. Approximately 9117 Acres*, 114 F. Supp. 3d 1144, 1171 (D. Kan. 2015), *aff'd in part, rev'd in part sub nom.  Northern Nat. Gas Co. v. L.D. Drilling*, 862 F.3d 1221 (10th Cir. 2017) (affirmed as to denial of attorney's fees)[5]; *Millennium Pipeline Co., L.L.C.  v. Acres of Land, Inc.*, No. 07-CV-6511L, 2015 WL 6126949, at *3 (W.D.N.Y. Oct. 16, 2015) ("Attorneys fees and expert witness fees are not recoverable, but are costs each side must bear.  [The *pro se* landowner] should be aware that courts routinely hold that there is no provision for an award of attorneys' fees in the Natural Gas Act." (internal quotation omitted)); *Williston Basin Interstate Pipeline Co. v. Property Interests Necessary to Conduct Gas Storage Operations*, No. CV-09-167-BLG-RFC, 2010 WL 5104991, *3 (D. Mont. Dec. 9, 2010) (holding American law does not provide for the award of attorney fees absent a contractual or statutory provision to the contrary, and there is no basis for awarding attorney's fees in the Natural Gas Act or Fed.R.Civ.P. 71.1);

---

[5] On appeal, the Tenth Circuit held that the Kansas attorney's fees provisions at issue did not apply to the facts of the case and thus did not reach the choice-of-law issue.

*Irick v. Columbia Gas Transmission Corp.*, No. 5:07cv00095, 2008 WL 191324, *3 (W.D. Va. Jan. 22, 2008) (holding state law on attorney's fees inapplicable to inverse condemnation claim alleging company took land outside the tract defined in its Natural Gas Act complaint).

At least one such Natural Gas Act case has expressly declined to extend cases applying state law as the measure of just compensation to litigation expenses. In *Atl. Coast Pipeline, Inc. v. 1.51 Acres*, the court rejected "defendants' argument that it need adopt North Carolina's fee-shifting rules as federal common law." No. 5:18-CV-127-BO, 2021 WL 535469, at *2 (E.D.N.C. Feb. 12, 2021). Citing the Third Circuit's *Tennessee Gas*[6] case relied on by the District Court, that court concluded, "The cases cited by defendants wherein courts have applied state common law have done so in the context of determining just compensation, not attorney fees and expenses." *Id.*

> d.  *The line of cases upon which the District Court relied are not persuasive, particularly in the context of attorney's fees.*

The cases relied upon by the District Court in support of its analysis focus on application of state property laws to the measure of just compensation, as opposed to recovery of litigation expenses specifically. Whatever the merits or faults of these

---

[6] *Tennessee Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237 (3d. Cir. 2019).

cases, they simply do not grapple with the body of federal law specific to recovery of attorney's fees and expenses. These cases do not address the Relocation Act's express statutory scheme for fee shifting in federal condemnations, nor do they address the Supreme Court precedent holding that the American Rule applies absent express statutory fee shifting.

For instance, *Tennessee Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres* decided "to incorporate state substantive law as the federal standard of measuring just compensation" in a Natural Gas Act condemnation. 931 F.3d at 255. The decision surveyed various Pennsylvania laws on just compensation and cited in passing a state law on "recovery of professional fees such as appraisal, attorney, and engineering fees." *Id.* at 245. But the court's reasoning for incorporating state law did not address attorney's fees or expenses and rather focused on "property rights" as an area of state concern and expertise. *Id*. at 251–54 (reasoning that "***property rights*** are traditionally an area of state concern" and that a federal rule would "merely superimpose a layer of ***property right allocation*** onto the already well-developed ***state property regime***" (emphasis added, citation omitted)).

Likewise, *Georgia Power Co. v. Sanders* dealt with how to account for "benefits accruing by virtue of the project" and "any increase in the value of the property caused by general knowledge of the project" in a Federal Power Act condemnation. 617 F.2d 1112, 1115 (5th Cir. 1980). The decision emphasized "the

state's interest in avoiding displacement of its laws in the area of ***property rights***, traditionally an area of local concern." *Id*. at 1123 (emphasis added). Similarly, *Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement* dealt with the "standard of valuation" for property taken in a Natural Gas Act condemnation. 962 F.2d 1192, 1193–94 (6th Cir. 1992). The decision stressed that "regardless of the rule chosen in this case, it will invariably derive its essence and much of its practical import from how the parties' ***property rights*** have been carved out under state law and how the parties have previously allocated these state-defined ***property rights***." *Id*. at 1198 (emphasis added).

Moreover, two of the decisions cited by the District Court rely on the abrogated state "practice and procedure" provision of the Natural Gas Act as a basis for applying state law. *See* 15 U.S.C. § 717f(h) ("The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated."). The *Columbia Gas* case "read the statute [15 U.S.C. § 717f(h)] as raising a strong presumption that state law does provide the proper measure" of just compensation. 962 F.2d at 1197. Meanwhile, *Mississippi River Transmission Corp. v. Tabor* cited the state "practice and procedure" provision as its sole basis for applying state law to a Natural Gas Act claim. 757 F.2d 662, 665 n.3 (5th Cir. 1985) (asserting that "15 U.S.C. § 717f(h)

requires that the practice and procedure in federal expropriation proceedings conform as nearly as possible with the practice and procedure to be followed in a state court action in the state where the property being expropriated is situated" and concluding "[t]herefore, Louisiana law controls the issues in this case").

As this Court has recognized, however, Rule 71.1 of the Federal Rules of Civil Procedure has superseded the state "practice and procedure" provision of the Natural Gas Act. *Alliance Pipeline L.P. v. 4.360 Acres of Land*, 746 F.3d 362, 367 (8th Cir. 2014). As such, this Court should afford no weight to cases relying on that provision as a basis for applying state law.

In short, the cases upon which the District Court relied are not persuasive, particularly in the special context of requests for attorney's fees and expenses. These cases, and ultimately the District Court, did not address either the impact of the Relocation Act or the Supreme Court's line of precedent mandating application of the American Rule to interpretation of federal statutes.

     e.    *Two recent cases awarding attorney's fees in Natural Gas Act cases failed to consider either the Relocation Act or the controlling precedent that imposes the American Rule on claims arising under federal laws.*

WBI Energy anticipates the Hoffmanns will point to two recent Eleventh Circuit decisions awarding attorney's fees in Natural Gas Act cases, both of which were decided after the District Court's order, to support their argument. *See Sabal Trail Transmission v. 18.27 Acres of Land in Levy County,* 59 F.4th 1158 (11th Cir.

2023) (hereinafter "*Sabal Trail I*"); *Sabal Trail Transmission, LLC v. 3.921 Acres of Land in Lake County Florida*, (hereinafter "*Sabal Trail II*") 74 F.4th 1346 (11th Cir. 2023). The Eleventh Circuit in *Sabal Trail I* affirmed an award of fees based on the premise that state law provides the measure of compensation in proceedings that arise under Section 717f(h) of the Natural Gas Act. *Id*. at 1175. *Sabal Trail I* relied on *Georgia Power Co. v. Sanders*, concluding that it was bound by the decision as circuit precedent[7] and must extend *Georgia Power's* holding to the Natural Gas Act. 617 F.2d 1112 (5th Cir. 1980). *Georgia Power* applied state law as the measure of compensation, concluding application of state law was appropriate because the Federal Power Act did not require uniformity of federal common law and property rights have traditionally been an area of local concern. 617 F.2d at 1121–1123. The case, however, dealt with an issue of property valuation, not litigation expenses. *Id.* at 1113. Nevertheless, the court in *Sabal Trail I* considered itself bound to follow the analysis of *Georgia Power* and did not consider issues peculiar to a request for attorney's fees. *Sabal Trail I*, 59 F.4th at 1160. Shortly thereafter, *Sabal Trail II* concluded it was bound by the outcome in *Sabal Trail I* and, as such, likewise affirmed an award of attorney's fees in proceedings under the Natural Gas Act. *Sabal Trail II*, 74 F.4th at 1347.

---

[7] The Fifth Circuit was divided in 1981, creating the Eleventh Circuit. The Eleventh Circuit, therefore, is bound by precedent of the former Fifth Circuit decisions rendered before October 1, 1981. *See Sabal Trail I*, 59 F.4th at 1179 n.1.

The cases, however, have little persuasive value, because they fail to address what should have been dispositive issues. Both *Sabal Trail* cases miss that the Relocation Act defines the conditions for awarding attorney's fees and other litigation expenses in Natural Gas Act cases. Moreover, both *Sabal Trail* cases fail to analyze or even mention the Supreme Court precedent that requires federal courts apply the American Rule when construing whether federal statutes allow fee shifting. The *Sabal Trail* cases do not address the leading arguments here and, as such, should be afforded little weight.

Moreover, *Sabal Trail I* reached its conclusion by uncritically following its prior-precedent in *Georgia Power*, which has been frequently criticized. In fact, in both *Sabal Trail I* and *Sabal Trail II*, circuit judges concurred with the result but expressed disagreement with the original analysis and outcome in *Georgia Power*. *Georgia Power* has been criticized as attempting an end-around Supreme Court precedent holding that federal common law, not state law, controls as to issues of compensation in federal condemnations. *See generally United States v. Miller,* 317 U.S. 369, 379-80 (1943); *Bodcaw*, 440 U.S. at 203. *Georgia Power* attempted to distinguish this Supreme Court precedent on the basis that the cases involved the United States itself, rather than a delegee, exercising the condemnation authority. 617 F.2d at 1119. In *Sabal Trail I*, the concurrence expressed agreement with the dissenters in *Georgia Power*, stating that they "fail to perceive any sound reason to

24

distinguish between condemnation proceedings brought by the United States and those in which it authorizes its power to be used by its statutory licensee for a federal public purpose." 59 F.4th at 1175 (Jordan, A., concurring) (quoting *Georgia Power*, 617 F.2d 1112 at 1129 (Rubin, A., dissenting)). The concurrence argued that "a private delegee invoking the federal government's eminent domain power should not have to pay a property owner's attorney's fees. Nothing in the Constitution or the Natural gas Act dictates otherwise." *Id*.

In *Sabal Trail II*, the concurrence asserted *Georgia Power* was wrongly decided and further argued that the panel in *Sabal Trail I* was not bound to extend the faulty reasoning in *Georgia Power* to the Natural Gas Act. 74 F.4th at 1349-50 (Grant, B., concurring). The concurrence asserted *Georgia Power* incorrectly applied state law as the measure of just compensation because the statute at issue authorized private licensees to condemn property by the exercise of eminent domain — "when Congress delegates 'the exercise of the right of eminent domain' without specifying more, it is granting the original landowners the compensation that is required by the Fifth Amendment." *Id*. at 1348.

The *Sabal Trail II* concurrence proceeded to note that "attorney's fees and expenses are not embraced within just compensation" under the Fifth Amendment, contending these "same rules apply when a federal statute authorizes private parties to exercise the right of eminent domain on behalf of the federal government." 74

F.4th at 1348-49 (Grant, B., concurring).  This is so because "[t]he Natural Gas Act should be read as providing no more compensation than is required by the Fifth Amendment," such that the panel in *Sabal Trail I* erred by applying state law to award attorney's fees.  *Id.* at 1350 (Grant, B., concurring).

This Court, of course, is not bound by *Georgia Power* or the *Sabal Trail* cases. Because none of these cases address the Relocation Act or the Supreme Court precedent requiring application of the American Rule when interpreting federal statutes, and because *Georgia Power* rests on dubious reasoning, this Court should afford the cases little weight.

## III.    If there is a gap in the federal statutory scheme, federal law applies and forecloses an award of litigation expenses.

Even if there were a gap in the federal statutory scheme, Supreme Court precedent directs application of federal law and forecloses an award of attorney's fees and expenses.  In the alternative, if the Court reaches the *Kimbell Foods* test, the *Kimbell Foods* factors weigh in favor of applying federal law.

### a.    *Supreme Court precedent directs application of federal law and forecloses an award of attorney's fees or other litigation expenses.*

Even if there were a gap in the statutory scheme, Supreme Court precedent regarding choice of law in federal condemnations would control.  These cases make clear that federal law defines just compensation in a federal condemnation, and that attorney's fees and other litigation expenses are not included in just compensation

under the Fifth Amendment. First, federal common law governs the determination of just compensation in federal condemnation proceedings, because the measure of compensation is a question of substantive right "grounded upon the Constitution of the United States." *Miller*, 317 U.S. at 379–80. And, as discussed above, the Supreme Court has specifically addressed litigation expenses in this context, holding that "indirect costs" such as attorney's fees and expenses "are not embraced within just compensation." *Bodcaw*, 440 U.S. at 203 (citation omitted). Likewise, "appraisal expenses [are] not part of the 'just compensation' required by the Fifth Amendment." *Id.* at 204.

The cases on which the District Court relied attempt to dodge *Miller* and its progeny on the basis that the case involved the United States as plaintiff, rather than a private condemnor. Those cases assert that the *Miller* line of cases do not apply to condemnations by non-governmental entities, because "the powerful federal interest at play when the federal government is the condemnor is considerably weakened when a private entity is the condemnor." *Tennessee Gas*, 931 F.3d at 248. This distinction, however, does not bear scrutiny. *See Sabal Trail II*, 74 F.4th at 1349 (Grant, B., concurring) ("when a federal statute authorizes 'the exercise of the right of eminent domain,' without saying more, the statute authorizes only the compensation required by the Fifth Amendment – regardless of whether the United States or a private licensee exercises that power."); *see also Tennessee Gas Pipeline*

*Co. v. Permanent Easement for 1.7320 Acres*, No. 3:CV-11-028, 2014 WL 690700, at *10 (M.D. Pa. Feb. 24, 2014) ("I fail to see a good reason to differentiate between condemnation proceedings brought by the United States and those in which the United States authorizes its condemnation power to be used by a private entity under the Natural Gas Act.").

*Miller's* reasoning did not turn on the federal government's interests, "but instead on the fact that the substantive right of just compensation was grounded on the United States Constitution." *Tennessee Gas*, 931 F.3d at 258 (Chagares, C.J., dissenting). "In other words, federal law applies to determine the just compensation owed upon an exercise of the federal eminent domain power because the right to just compensation is a federal substantive right, regardless of whether the taking is for an 'essential governmental function' or requires the spending of federal dollars." *Id.*; *see also Guardian Pipeline, L.L.C. v. 950.80 Acres of Land, No. 01 C 4696*, 2002 WL 1160939, at *1 (N.D. Ill. May 30, 2002) (noting that the *Georgia Power* and *Columbia Gas* cases "rely in part on a dubious distinction between government and a private entity exercising the federal power"). The Fifth Amendment sets the measure of damages in a condemnation brought under federal law, and the meaning of the Fifth Amendment does not vary depending on whether the federal government exercises eminent domain directly or delegates its authority. *See Sabal Trail II*, 74 F.4th at 1348 (Grant, B., concurring) ("whether the federal government itself or a

private licensee is exercising the federal eminent domain power, the power is the same.").

Ultimately, "[r]esort to state law is inappropriate in federal question cases when controlling federal common law exists and directly conflicts with the state rule." *Home Sav. Bank, F.S.B. by Resolution Tr. Corp. v. Gillam*, 952 F.2d 1152, (9th Cir. 1991) (reversing award of attorney's fees under state law). Yet that is what happened here. The District Court erred in relying on state law that directly conflicts with controlling Supreme Court precedent. *See Bodcaw*, 440 U.S. at 203–04.

      b.     *In the alternative, the Kimbell Foods factors weigh in favor of applying federal law.*

For the reasons discussed above, no gap exists in the controlling federal law, and Supreme Court precedent forecloses the application of state law, so it was improper for the District Court to reach the *Kimbell Foods* analysis. However, even if one reaches the *Kimbell Foods* factors, the factors do not weigh in favor of adopting the state rule for awards of attorney's fees and costs. The North Dakota eminent domain statute grants the trial court discretion to award reasonable attorney's fees and costs to landowners in an eminent domain action, almost regardless of outcome. *See Cass Cty. Joint Water Res. Dist. v. Erickson*, 918 N.W.2d 371 (N.D. 2018) (affirming award of fees and costs despite recovery of less than condemnor's offer). The *Kimbell Foods* factors, however, do not support adopting

such a permissive rule on the recovery of attorney's fees and expenses in a Natural Gas Act case.

The *Kimbell Foods* factors are (1) whether the federal program requires uniformity; (2) whether application of state law would frustrate specific objectives of the federal program; and (3) whether application of uniform federal law would disrupt existing commercial relationships predicated on state law. 440 U.S. at 728–29. Here, all three factors weigh in favor of federal law.

First, a federal program, the Relocation Act, does require uniformity as to the award of litigation expenses in Natural Gas Act condemnations. As its name suggests, the ***Uniform*** Relocation Assistance and Real Property Acquisition Policies Act requires uniform treatment on the topics it addresses, including recovery of litigation expenses. "The Relocation Act was enacted to 'establish[ ] a ***uniform policy*** for the fair and equitable treatment of persons displace[d] as a direct result of programs or projects undertaken by a federal agency.'" *Atl. Coast Pipeline, LLC*, 2021 WL 3236589, at *1 (quoting 42 U.S.C. § 4621(d) (emphasis added)). "Federal agency" is defined to include entities like WBI Energy who have "the authority to acquire property by eminent domain under Federal law." 42 U.S.C. § 4601(1). Thus, even if the Relocation Act did not directly answer the question at hand (it does), Congress has expressly legislated a policy of uniformity.

Moreover, Section 717(c) of the Natural Gas Act provides that certain enumerated matters are exempted from the Act and, as "matters primarily of local concern," are "subject to regulation by the several States." 15 U.S.C. § 717(c). The exemption enumerates neither compensation awards generally nor litigation expenses specifically. These state-law carveouts weigh in favor of uniformity in other areas. Had Congress intended state law to control compensation awards, it would have said so in Section 717(c).

Adopting a patchwork of state laws to supplement the statutory conditions under which attorney's fees may be awarded would, therefore, run afoul of Congressional intent. The above Congressional directives apply regardless of whether the United States is a party to a condemnation. They also apply regardless of the fact that Rule 71.1 supplies a uniform procedure—that Congress intends uniformity in procedure does not somehow imply that Congress intends diversity in substantive rules or inconsistency in results from state to state.

In its decision, the District Court reasons that "property rights are traditionally an area of state concern, especially in North Dakota." App. 244; R. Doc. 131, at 12; Add. 012 citing 36 C.J.S. Federal Courts § 189(5) (1960) ("As a general rule, legal interests and rights in property are created and determined by state law. . . . [Thus,] the courts of the United States have applied state law in cases involving . . . the power of eminent domain and its exercise. . . ."). Such reasoning simply does not apply to

awards of attorney's fees and costs. Fees and costs are not a matter of property law, nor are awards of litigation expenses "traditionally an area of state concern." Traditionally, state law governs fee shifting for state claims and federal law governs fee shifting for federal claims. *See, e.g., Home Sav. Bank by Resol. Tr. Corp*., 952 F.2d at 1162–63; *Modzelewski*, 14 F.3d at 1379. States have "no special interest in the collection of attorney's fees in federal question cases litigated in federal court." *Home Sav. Bank by Resol. Tr. Corp*., 952 F.2d at 1163 n.3 (distinguishing *Kimbell Foods*). As such, the first *Kimbell Foods* factor militates in favor of applying federal law.

Second, application of state law would frustrate specific objectives of the federal program. To begin, application of state law would frustrate the express Congressional intent for uniformity described in the Relocation Act, even if not deemed a "requirement" of the federal program. Moreover, the Supreme Court has held that the Natural Gas Act was "framed as to afford ***consumers*** a complete, permanent and effective bond of protection from excessive rates and charges." *Sunray Mid-Con. Oil Co. v. Fed. Power Comm'n*, 364 U.S. 137, 147 (1960) (emphasis added, citation omitted). The District Court found the "only imaginable result that adopting state law as the measure of just compensation might have on this purpose would be that condemners proceeding under the Act may be required to pay more or less than under an alternative federal common-law rule." App. 245; R. Doc.

131, at 13; Add. 013.  What the District Court missed is the obvious reality that adopting state rules resulting in higher condemnation costs will increase pipeline costs that ultimately flow through to consumers of natural gas.  *See, e.g.*, FERC Cost-of-Service Rates Manual (June 1999), p. 1[8] (FERC uses "cost-of-service ratemaking" to balance "the interests of the pipeline and its ratepayers").  This is especially so with a permissive rule on fee shifting like that under North Dakota law, which incentivizes landowners to litigate.  Adopting such laws would frustrate Congress's intent to protect consumers with the Natural Gas Act.  *See id*.  Thus, the second *Kimbell Foods* factor also favors application of federal law.

Third, there are no "existing commercial relationships predicated on state law" when it comes to awards of litigation expenses.  Rather, "because there already exists 'an established body of federal law on the issue of just compensation' in general, parties that conduct business in this industry are already on notice of the potential application of federal law."  *Tennessee Gas*, 931 F.3d at 254 (quoting *Georgia Power*, 617 F.2d at 1123 n.17).  That point is particularly salient here, because long-standing Supreme Court precedent specifically forecloses awards of litigation expenses in federal condemnations.  *See Bodcaw*, 440 U.S. at 203–04.

---

[8] *Available at* https://www.ferc.gov/sites/default/files/2020-08/cost-of-service-manual.pdf

Lastly, the District Court's primary authority on the third factor is language from *Columbia Gas* that once again focuses on property law, reasoning that a uniform federal rule would "merely superimpose a layer of property right allocation onto the already well-developed state property regime." *Columbia Gas*, 962 F.2d at 1198. Again, this point simply does not apply to awards of fees and costs. Fee shifting is not a matter of property rights or state property law. The third *Kimbell Foods* factor supports application of federal law.

In sum, although the District Court should not have reached the *Kimbell Foods* test, all three factors weigh in favor of applying a federal rule and the federal rule indisputably forecloses an award of litigation expenses to the Hoffmanns. *Bodcaw*, 440 U.S. at 203.

## CONCLUSION

The District Court erred in applying state law to award attorney's fees and costs in a federal condemnation, resulting in an award contrary to federal law. WBI Energy respectfully requests that the Court reverse Supplemental Judgment (App. 255; R. Doc. 143; Add. 023) awarding attorney's fees and costs to the Hoffmanns.

Dated this 22nd day of May, 2024.

        */s/ Paul J. Forster*

Paul J. Forster (ND ID #07398)
pforster@crowleyfleck.com
CROWLEY FLECK PLLP
100 West Broadway, Suite 100
Bismarck, North Dakota 58501
(701) 223-6585

*Attorneys for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations imposed by Federal Rule of Appellate Procedure 32(a)(7)(B)(i). It contains 7904 words, excluding the parts of the brief exempted by Rule 32(f).

This brief complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6). It has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

This brief complies with the electronic-filing requirements of Local Rule 28A(h)(2) because it was scanned for viruses using Cortex XDR and no virus was detected.

Dated this 22nd day of May, 2024.

*/s/ Paul J. Forster*
Paul J. Forster (ND ID #07398)
pforster@crowleyfleck.com

**CERTIFICATE OF SERVICE**

I certify that on May 22, 2024, I electronically filed the foregoing brief with the Clerk of the Court by using the CM/ECF system, and that the CM/ECF system will accomplish service on all parties represented by counsel who are registered CM/ECF users.

Dated this 22nd day of May, 2024.

*/s/ Paul J. Forster*
Paul J. Forster (ND ID #07398)
pforster@crowleyfleck.com