**No. 24-1693**

# In the
# United States Court of Appeals
## for the Eighth Circuit

WBI ENERGY TRANSMISSION, INC.,

*Plaintiff-Appellant,*

v.

189.9 RODS, MORE OR LESS, LOCATED IN TOWNSHIP 149 NORTH,
RANGE 98 W SECTION 11: W1/2SE1/4 SECTION 14: NW1/4NE1/4
MCKENZIE COUNTY, NORTH DAKOTA, AN EASEMENT
AND RIGHT-OF-WAY ACROSS, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the District of North Dakota – Western, No. 1:18-cv-00078-DLH.
The Honorable Daniel L. Hovland, Judge Presiding.

## BRIEF OF DEFENDANTS-APPELLEES

DERRICK BRAATEN
BRAATEN LAW FIRM
109 North Fourth Street, Suite 100
Bismarck, ND 58501
(701) 221-2911

*Counsel for all Defendants-Appellees,
189.9 rods, more or less, located in Township 149
North, Range 98 W Section 11: W1/2SE1/4
Section 14: NW1/4NE1/4 McKenzie County,
North Dakota, an easement and right-of-way
across, et al.*

CP  COUNSEL PRESS · (866) 703-9373                    PRINTED ON RECYCLED PAPER  

Appellate Case: 24-1693    Page: 1    Date Filed: 07/12/2024 Entry ID: 5412977

## Summary of the Case and Request for Oral Argument

The Appellees own ranch land in northwestern North Dakota. WBI Energy, under the authority of the Natural Gas Act, sought a pipeline easement on that land and brought a condemnation proceeding to acquire one. The parties stipulated to WBI's immediate access to the land and later reached a partial agreement on compensation for that access and the presence of the buried pipeline, but left unresolved the landowners' right to recover, as part of their rightful compensation, their attorney's fees and expenses.

While the Natural Gas Act does not address compensation, a North Dakota statute and the state's constitution authorize courts to award condemnees their fees and expenses. The Natural Gas Act's silence required the District Court, as it stated, to fill the law's interstices with federal common law, citing *United States v. Kimbell Foods*, 440 U.S. 715, 727 (1979). The Court applied the three *Kimbell* factors and judicial deference to state law and, noting that WBI is a private actor not the federal government, adopted the North Dakota law as the federal rule of decision and ordered WBI to pay the landowners' attorney's fees and expenses.

While other circuits adopt state law to measure and calculate compensation in Natural Gas Act condemnations, the Eighth Circuit has not addressed the issue, and so oral argument of twenty minutes per side is warranted and requested.

i

# Table of Contents

Summary of the Case and Request for Oral Argument ............................................. i

Table of Contents .................................................................... ii

Table of Authorities ................................................................ iv

Statement of Issues ..................................................................1

Statement of the Case ................................................................2

    I.     Factual Background. ..........................................................2

    II.    Procedural History. ..........................................................2

Summary of the Argument .............................................................3

Argument...........................................................................7

    I.     Standard of review...........................................................7

    II.    The Natural Gas Act does not address, one way or another, compensation owed landowners. ......................................................8

    III.   Several Circuits adopt state law as the rule of decision to measure compensation owed for condemnations under the Natural Gas Act. .........10

    IV.   WBI's cited Natural Gas Act decisions....................................12

    V.    The Relocation Act does not foreclose adopting a state statute that allows recovery of attorney's fees and expenses....................................14

    VI.   The American Rule does not apply to condemnations under the Natural Gas Act. ...............................................................23

    VII.   Applying *Kimbell Foods* requires adopting North Dakota law. ................30

        A.   Introduction. ...........................................................30

        B.   The *Kimbell* factors........................................................31

        C.   *Kimbell* Summary ........................................................36

Appellate Case: 24-1693     Page: 3     Date Filed: 07/12/2024 Entry ID: 5412977

Conclusion ....................................................................................................36

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and
Type-Style Requirements.................................................................................37

Circuit R. 28A(h) Certification ...............................................................38

Certificate of Service .................................................................................39

Appellate Case: 24-1693     Page: 4     Date Filed: 07/12/2024 Entry ID: 5412977

# Table of Authorities

**Cases**                                                                                                                                      **Page(s)**

*Alden v. Maine*,
   527 U.S. 706 (1999) ...............................................................................35

*Atlantic Coast Pipeline, Inc. v. 1.51 Acres*,
   No. 5:18-CV-127-BO, 2021 U.S. Dist. LEXIS 27218
   (E.D.N.C. Feb. 12, 2021) ............................................................ 14, 15

*Atlantic Coast Pipeline, L.L.C. v. 3.13 Acres, More or Less,*
   No. 5:18-CV-426-BO, 2021 U.S. Dist. LEXIS 141538
   (E.D.N.C. July 28, 2021) ............................................................ 24, 25

*Atlantic Coast Pipeline, L.L.C. v. 3.92 Acres, More or Less,*
   No. 5:18-CV-387-BO, 2021 U.S. Dist. LEXIS 5557
   (E.D.N.C. Jan. 11, 2021) ..............................................................25

*Baker Botts L.L.P. v. ASARCO L.L.C.*,
   576 U.S. 121 (2015) ...............................................................................35

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. Parnell*,
   352 U.S. 29 (1956) ..................................................................................23

*Biden v. Missouri,*
   595 U.S. 87, 142 S. Ct. 647 (2022) ....................................................19

*Bismarck v. Thom*,
   261 N.W.2d 640 (N.D. 1977)...............................................................31

*Cass County Joint Water Resource District v. Erickson*,
   918 N.W.2d 371 (N.D. 2018).............................................. 31, 32, 33

*Chicago Title Ins. Co. v. Sherred Village Associates*,
   708 F.2d 804 (1st Cir. 1983) ..................................................................8

*Clearfield Tr. Co. v. United States*,
   318 U.S. 363 (1943) ................................................................................4

*Columbia Gas Transmission Corp. v. Exclusive National Gas Storage Easement*,
   962 F.2d 1192 (6th Cir. 1992) ..................................................... passim

Appellate Case: 24-1693   Page: 5   Date Filed: 07/12/2024 Entry ID: 5412977

*Davies Warehouse Co. v. Bowles*,
   321 U.S. 144 (1944) ...................................................................37

*Fed. Power Com. v. Hope Nat'l Gas Co.*,
   320 U.S. 591 (1944) ............................................................... 39, 40

*Fed. S&L Ins. Corp. v. Capozzi*,
   855 F.2d 1319 (8th Cir. 1988) .............................................. 28, 38

*Georgia Power Co. v. 138.30 Acres*,
   617 F.2d 1112 (5th Cir. 1980) .......................................... passim

*Gissel v. Kenmare Twp.*,
   512 N.W.2d 470 (N.D. 1994) ................................................ 31, 32

*Hanson v. Seaver* (*In re Hanson*),
   903 F.3d 793 (8th Cir. 2018) .....................................................8

*Hardt v. Reliance Std. Life Ins. Co.*,
   560 U.S. 242 (2010) ...................................................................27

*In re Columbia Gas Sys.*,
   997 F.2d 1039 (3d Cir. 1993) .....................................................4

*Irick v. Columbia Gas Transmission Corp.*,
   No. 5:07-cv-00095, 2008 U.S. Dist. LEXIS 4388 (W.D. Virg. 2008) ...............15

*Kamen v. Kemper Fin. Servs.*,
   500 U.S. 90 (1991) ...................................................................42

*Kelo v. City of New London*,
   545 U.S. 469 (2005) ...................................................................33

*Millennium Pipeline Co., L.L.C. v. Acres of Land, Inc.*,
   No. 07-CV-6511L, 2015 U.S. Dist. LEXIS 141234
   (W.D. N.Y., Oct. 16 2015) .......................................................... 13, 14

*Miree v. De Kalb Cnty.*,
   433 U.S. 25 (1977) ...................................................................23

*Mississippi River Transmission Corp. v. Tabor*,
   757 F.2d 662 (5th Cir. 1985) .......................................................11

Appellate Case: 24-1693    Page: 6    Date Filed: 07/12/2024 Entry ID: 5412977

*Northern National Gas Co. v. Approx. 9,117 Acres*,
    114 F. Supp. 3d 1144 (D. Kan. 2015)......................................................15

*Northern National Gas Co. v. L.D. Drilling*,
    862 F.3d 1221 (10th Cir. 2017) ............................................................15

*Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*,
    429 U.S. 363 (1977) ..............................................................................37

*Petersburg Sch. Dist. v. Peterson*,
    103 N.W. 756 (N.D. 1905)................................................................ 29, 30

*Sabal Trail Transmission, L.L.C. v. 18.27 Acres of Land*,
    59 F.4th 1158 (11th Cir. 2023) ....................................................... passim

*Snider v. City of Cape Girardeau*,
    752 F.3d 1149 (8th Cir. 2014) .................................................................9

*Sunray Mid-Continent Oil Co. v. Federal Power Comm'n.*,
    364 U.S. 137 (1960) ..............................................................................40

*Tennessee Gas Pipeline Co. v. Permanent Easement for 7.053 Acres*, 931
    F.3d 237 (3d Cir. 2019)................................................................ passim

*Transwestern Pipeline Co. v. 17.19 Acres*,
    627 F.3d 1268 (9th Cir. 2010) ......................................................... 25, 26

*United States v. 410.69 Acres of Land, etc.*,
    608 F.2d 1073 (5th Cir. 1979) ...............................................................21

*United States v. Great Plains Gasification Associates*,
    813 F.2d 193 (8th Cir. 1987)..................................................................19

*United States v. Kimbell Foods*,
    440 U.S. 715 (1979) ...................................................................... passim

*United States v. Miller*,
    317 U.S. 369 (1943)...............................................................................22

*United States v. Moore*,
    931 F.2d 245 (4th Cir. 1991)..................................................................28

vi

Appellate Case: 24-1693     Page: 7     Date Filed: 07/12/2024 Entry ID: 5412977

*United States v. Yazell*,
  382 U.S. 341 (1966) ...................................................................20

*Wallis v. Pan Am. Petrol. Corp.*,
  384 U.S. 63 (1966) ............................................................... 26, 28

*Whitman v. American Trucking Association*,
  531 U.S. 457 (2001) ...................................................................20

*Williston Basin Interstate Pipeline Co. v. Property Interests, etc.*,
  No. CV-09-167-BLG-RFC, 2010 U.S. Dist. LEXIS 130098
  (D. Mont. Dec. 9, 2010) ..............................................................13

**Statutes**

15 U.S.C. § 717f(h) ................................................................. 1, 4, 9

15 U.S.C. § 717y(b)(2) ...................................................................21

42 U.S.C § 4654(a)(2) ...................................................................18

42 U.S.C. § 4601(1) ...................................................................17

42 U.S.C. § 4601(6)(A)(i) ...................................................................17

42 U.S.C. § 4621(b) ............................................................... 16, 20

42 U.S.C. § 4621(b)(c) ...................................................................17

42 U.S.C. § 4654 .....................................................................7

42 U.S.C. § 4654(a)(1) ...................................................................18

North Dakota Century Code § 32-15-32....................................5, 31

P.L. 100-17, Title IV § 402; 101 Stat. 246 (a)(1) ...................................17

P.L. 91-646, Title I, § 101; 84 Stat. 1894 ............................................16

**Other Authorities**

2007 N.D. Sess. L., ch. 578 ............................................................34

2019 H. Bill 1207 Legislative History ........................................... 33, 34

26 Am. Jur. 2d Eminent Domain § 234 (2004) ......................................12

Appellate Case: 24-1693    Page: 8    Date Filed: 07/12/2024 Entry ID: 5412977

H.R. Rep. No. 91-1656 ................................................................... 20, 22

Mishkin, *The Variousness of "Federal Law:" Competence and Discretion in the Choice of National and State Rules for Decision*, 105 U. Pa. L. Rev. 797 (1957) ..................................................................................37

Wechsler, *The Political Safeguards of Federalism: The Role of the States in the Composition and Selection of the National Government*, 54 Colum. L. Rev. 543 (1954)..................................................................................36

**Rules**

Fed. R. Civ. P. 71.1 ..................................................................................32

**Constitutional Provisions**

N.D. Const. art. I, § 1 ..............................................................................29

N.D. Const. art. I, § 16............................................................................29

Appellate Case: 24-1693    Page: 9    Date Filed: 07/12/2024 Entry ID: 5412977

**Statement of Issues**

1.     In a condemnation by a private party under the Natural Gas Act, which is silent on landowner compensation, was the District Court correct in identifying a gap in the Act regarding recovery of attorney's fees and expenses, elements of just compensation?

    Most Apposite Authorities:

- Natural Gas Act, 15 U.S.C. § 717f(h)
- *Sabal Trail Transmission, L.L.C. v. 18.27 Acres of Land*, 59 F.4th 1158 (11th Cir. 2023)
- *Tennessee Gas Pipeline Co. v. Permanent Easement for 7.053 Acres*, 931 F.3d 237 (3d Cir. 2019)
- *Columbia Gas Transmission Corp. v. Exclusive National Gas Storage Easement*, 962 F.2d 1192 (6th Cir. 1992)

2.     Because the Natural Gas Act does not address landowner compensation in condemnations by private parties, was the District Court correct to adopt as the federal rule of decision North Dakota constitutional and statutory law that awards landowners attorney's fees and expenses as part of their just compensation?

    Most apposite authorities:

- *United States v. Kimbell Foods*, 440 U.S. 715, 727 (1979)
- *Sabal Trail*, 59 F.4th 1158
- *Tenn. Gas*, 931 F.3d 237
- *Columbia Gas*, 962 F.2d 1192

1

## Statement of the Case

### I.  Factual Background.

The Appellees own land in northwestern North Dakota. The land is primarily pasture on which the Appellees ("the Ranchers") run livestock. *See* App. 004-005; R. Doc. 1, at ¶ 12; App. 008; R. Doc. 1-8. WBI Energy Transmission, Inc., is a natural gas company with a variety of natural gas related operations. App. 042; R. Doc. 5 at ¶ 3. In 2017, it sought authority to construct and operate the pipeline at issue, and late in 2017 the Federal Energy Regulatory Commission ("FERC") issued a notice of authorization. App. 022; R. Doc. 1-10. To carry out the project, WBI required access to land it did not own, including the Ranchers' pastures. App. 044; R. Doc. 5, at ¶ 15. The compensation WBI offered the Ranchers was inadequate, and they rejected it.

### II.  Procedural History.

WBI filed its condemnation complaint in April 2018. App. 006; R. Doc. 1. It asserted the right to condemn the Ranchers' land under the Natural Gas Act of 1938 and Fed. R. Civ. P. 71.1 ("Condemning Real and Personal Property"). App. 002; R. Doc. 001, at ¶ 2. It sought an easement on the land to build and operate the pipeline. App. 002; R. Doc. 001, at ¶ 2. WBI and the Ranchers stipulated to the company's access to the land, which the court approved, App. 052; R. Doc. 19, leaving the amount of compensation to be litigated.

A bench trial began in April 2021. On its second day, WBI and the Ranchers reached a partial settlement on compensation, leaving for judicial resolution whether WBI was obligated to pay the Ranchers, as part of their rightful compensation, their attorney's fees and expenses. App. 146; R. Doc. 108; App. 156-57; R. Doc. 115, at 2-3. After briefing, the District Court ruled the Ranchers entitled to those fees and expenses, App. 247; R. Doc. 131, at 15, and later awarded the Ranchers $332,724.90 in attorney's fees and $50,650.86 in expenses, including expert fees. App. 248; R. Doc. 143, at 7. WBI filed its appeal on April 1, 2024. App. 256; R. Doc. 144.

## Summary of the Argument

As the District Court put it, "[f]rom farming to original homesteads, it is in the blood of North Dakota landowners to be protective of their real estate. From family ties to the need for farmers to grow crops, property ownership is near and dear to those who maintain it. Ultimately, creating a nationally uniform rule for compensation risks 'muddying elaborate state property rules' and interests therein." App. 244; R. Doc. 131, at 12.

WBI Energy condemned a pipeline easement under the Natural Gas Act, relying on a section of the Act that gives FERC-recognized private entities condemnation authority. 15 U.S.C. § 717f(h). Neither this provision, however, nor any other provision in the Natural Gas Act addresses, one way or another, what compensation landowners are to receive. Consequently, there is a gap in the Act

3

regarding calculating compensation, including a gap on responsibility for landowner attorney's fees and expenses, which under North Dakota law are an element of just compensation. Courts have recognized the compensation gap in the Act. *E.g.*, *Sabal Trail*, 59 F.4th at 1163; *Tenn. Gas*, 931 F.3d at 243.

Where Congress leaves a void in a legislative program, federal courts are not without means to supply the rule of decision. *E.g.*, *Kimbell Foods, Inc.*, *Kimbell Foods*, 440 U.S. at 727 (citing *Clearfield Tr. Co. v. United States*, 318 U.S. 363, 367 (1943)). They can fashion or identify a nationwide federal rule, or they can adopt a state rule. *Id*. at 728. Although in respect for federalism, where there is an appropriate state rule, "[d]eveloping a federal common law rule is the exception rather than the rule." *In re Columbia Gas Sys.,* 997 F.2d 1039 (3d Cir. 1993). Whether a federal rule is to be applied or a state law adopted as the federal rule of decision depends on evaluating the *Kimbell* factors. *Kimbell Foods*, 440 U.S. at 728-29.

Adopting state law here was an option because a North Dakota statute gives courts discretion to award a condemnee "reasonable actual . . . costs . . . and reasonable attorney's fees." North Dakota Century Code § 32-15-32.[1] The statute is

---

[1] The statute is in Chapter 32-15 ("Eminent Domain"). The statute, with emphasis added, states:

Appellate Case: 24-1693     Page: 13     Date Filed: 07/12/2024 Entry ID: 5412977

part of the state's legal framework—constitutional, judicial, and statutory—that recognizes attorney's fees and expenses as an element of the just compensation due landowners whose land is condemned for the betterment of the community.

The District Court, finding that a federal common law has yet to be developed regarding recovery of attorney's fees and expenses in condemnations carried out by a private party under the Natural Gas Act, applied *Kimbell* and found that a uniform federal law is not necessary to protect the Act's purposes and that adopting the state statute will neither frustrate those purposes nor disrupt commercial relationships and expectations based on state law. App. 243-47; R. Doc. 131, at 11-15. This conclusion is consistent with other courts that have applied *Kimbell* and adopted state law to measure the compensation due landowners subject to Natural Gas Act condemnations by private companies. *Sabal Trail*, 59 F.4th at 1175; *Tenn. Gas*, 931 F.3d at 255; *Columbia Gas*, 962 F.2d at 1199. *See also Georgia Power Co. v. 138.30*

---

The court may in its discretion award to the defendant reasonable actual or statutory costs or both, which may include interest from the time of taking except interest on the amount of a deposit which is available for withdrawal without prejudice to right of appeal, costs on appeal, and reasonable attorney's fees for all judicial proceedings. If the defendant appeals and does not prevail, the costs on appeal may be taxed against the defendant. In all cases when a new trial has been granted upon the application of the defendant and the defendant has failed upon such trial to obtain greater compensation than was allowed the defendant upon the first trial, the costs of such new trial shall be taxed against the defendant.

5

*Acres*, 617 F.2d 1112, 1124 (5th Cir. 1980) (en banc) (applying the Federal Power Act, the relevant provisions of which are almost identical to the Natural Gas Act).

WBI asserts two reasons why *Kimbell Foods* does not apply. It argues there is, in fact, no gap in the Natural Gas Act, and as such *Kimbell* is inapplicable. It asserts that a different law, the Uniform Relocation Act ("URA"), applies to all condemnations under federal law and it sanctions recovery of attorney's fees and expenses in only two very limited situations, thereby indirectly prohibiting recovery in all others. The provision WBI relies on mandates that courts "shall award" attorney's fees and expenses when it turns out the condemnor cannot use condemnation to acquire the interest and also when a condemnor abandons a condemnation proceeding it commenced. 42 U.S.C. § 4654. Neither of these occurred here. Section 4654's mandatory award for the two situations, however, does not exhaust the field and does not preclude in other situations application of *Kimbell* and federalism, and the discretion courts have to include as part of the landowner's compensation  attorney's fees and expenses as authorized by a state statute. The URA is a general law intended to *protect* citizens from government condemnations and to afford them rights when condemnations occur, and yet WBI relies on it to avoid its obligation to reimburse fees to citizens. WBI's strained interpretive argument regarding the remedial provisions of the URA is backwards and turns a shield for condemnees into a sword for condemnors.

6

WBI also asserts that there is not a gap in the Natural Gas Act because a federal standard, the American Rule, bars fee-shifting unless allowed by Congress. To make this argument, WBI misrepresents the nature of the attorney fees and expenses requested by the Ranchers. According to North Dakota law—applicable under *Kimbell Foods* because the Natural Gas Act does not address compensation— these attorney's fees and expenses and their recovery are an element of just compensation. They are not separate from just compensation. Only by refusing to acknowledge the connection between just compensation and fees and expenses under North Dakota law does WBI have an American Rule-based argument.

## Argument

### I.    Standard of review.

The appeal requires construction of federal statutes, to which the de novo standard of review applies. *E.g.*, *Hanson v. Seaver* (*In re Hanson*), 903 F.3d 793, 796 (8th Cir. 2018). It further involves review of the District Court's decision identifying the appropriate rule of decision, a legal question, to which the de novo standard also applies. *Id. See also Tenn. Gas*, 931 F.3d at 242 (whether state or federal law governs compensation under the Natural Gas Act is a "purely legal question"); *Sabal Trail*, 59 F.4th at 1162 (same). However, because analysis of the *Kimbell* factors "requires a number of factual determinations and judgment calls in light of the evidence as a whole," a district court's analysis of those factors should

7

not be disturbed unless the appellate court has a definite and firm conviction that a mistake was made. *Chicago Title Ins. Co. v. Sherred Village Associates*, 708 F.2d 804, 810 (1st Cir. 1983).

Lastly, the Ranchers do not understand WBI's appeal to challenge the amount or reasonableness of the fees and expenses awarded by the District Court, which if challenged would be subject to the abuse of discretion standard of review. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014).

## II.   The Natural Gas Act does not address, one way or another, compensation owed landowners.

The Natural Gas Act states that a holder of a certificate of public convenience and necessity who cannot acquire by contract a pipeline easement "may acquire" one "by the exercise of the right of eminent domain." 15 U.S.C. § 717f(h).[2] WBI

---

[2] 15 U.S.C. § 717f(h), with emphasis added, states:

> **Right of eminent domain for construction of pipelines, etc.** <u>When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line</u> or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, <u>it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts</u>. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the

Energy brought its condemnation complaint under this authority. App. 002; R. Doc. 001, at ¶¶ 2-3. The authority-granting Section 717f(h), however, says nothing about compensation. "[I]t does not even expressly require that just compensation be provided." *Tenn. Gas*, 931 F.3d at 243. The statute is equally silent about whether a landowner's attorney's fees and expenses may be recovered from the condemnor, and no other provision of the Act addresses the subject. On the question "whether federal or state law supplies the standard for determining compensation" under the Act, the Act "is totally silent." *Sabal Trail*, 59 F.4th at 1163. *See also Tenn. Gas*, 931 F.3d at 243 (the Act is "silent on the issue of condemnation"); *Columbia Gas*, 962 F.2d at 1196 (discussing "fill[ing] the interstices" of federal law and "defining the contours of § 717f(h)"). "Given that silence . . . Congress has left a gap in the statute whether state law or federal law should supply the measure of compensation . . . ." *Sabal Trail*, 59 F.4th at 1163. As such, "'the task of interstitial federal lawmaking falls upon the federal judiciary . . . .'" *Id*. (quoting *Ga. Power,* 617 F.2d at 1115.)

In sum, the Third, Sixth, and Eleventh Circuits—and likely the Tenth as well, as discussed below—conclude that the Natural Gas Act does not address what

---

practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

obligations a condemnor has to compensate landowners, and consistent with these decisions is the Fifth Circuit's Federal Power Act decision in *Georgia Power*. The silence on compensation opens the door and allows courts to consider filling the gap with compensation obligations set out in state law, such as North Dakota's on-point fee-shifting statute.

### III. Several Circuits adopt state law as the rule of decision to measure compensation owed for condemnations under the Natural Gas Act.

The Fifth Circuit has addressed whether state law applies to determine the compensation owed by a private entity exercising federal condemnation authority.

> [T]he law of the state where the condemned property is located is to be adopted as the appropriate federal rule for determining the measure of compensation when a licensee of [FERC] exercises the power of eminent domain pursuant to . . . the Federal Power Act.

*Ga. Power*, 617 F.2d at 1124.

The Fifth Circuit has extended *Georgia Power's* reasoning to the Natural Gas Act. It held in *Mississippi River Transmission Corp. v. Tabor*, 757 F.2d 662, 676 (5th Cir. 1985), that the landowner is "to be compensated to the full extent of his loss in accordance with the Louisiana constitution and expropriation statutes." Other circuits also adopt state law. In *Tennessee Gas*, the Third Circuit explained that it was presented with "whether state law or federal law governs the substantive determination of just compensation in condemnation actions brought by private entities under the [Natural Gas Act]," and in answering this question it

10

"incorporate[d] state law as the federal standard." *Tenn. Gas*, 931 F.3d at 241. *See also Sabal Trail*, 59 F.4th at 1174 (state law "determine[s] the measure of compensation in condemnation proceeding [under the Natural Gas Act]"); *Columbia Gas*, 962 F.2d at 1199 (the Act "incorporates the laws of the state . . . in determining the amount of compensation due."). In sum, "the federal standard for compensation in eminent domain cases establishes the floor, not the ceiling, on compensation." *Sabal Trail*, 59 F.4th at 1170. "[F]ederal courts entertaining a [FERC] condemnation action use the law of the state in which the condemned property is located in determining the amount of compensation due." 26 Am. Jur. 2d Eminent Domain § 234 (2004).

The analysis used in these decisions to find that just compensation is measured according to state standards extends to assessing whether attorney's fees are recoverable from private condemnors. The *Sabal Trail* decision recognizes that in "some states" an award of attorney's fees in condemnation actions is "a part of compensation." *Sabal Trail*, 59 F.4th at 1174 n.10. And since Florida is one of those states, the landowning family in *Sabal Trail* recovered "as part of its compensation" what Florida allowed for attorney's fees and expenses. *Id.* In *Tennessee Gas,* the court noted that under Pennsylvania law property owners can obtain greater compensation from condemnors under state law "than they could under federal law," in part because Pennsylvania law "permits"—at some level—"recovery of

11

professional fees such as appraisal, attorney, and engineering fees." *Tenn. Gas*, 931 F.3d at 245. North Dakota is also one of those states in which fees and expenses are a part of just compensation, as discussed below in Section VI.

## IV.    WBI's cited Natural Gas Act decisions

WBI cites a handful of decisions that, it says, hold that the Natural Gas Act does not allow awarding landowners attorney's fees and expenses. WBI Brf. at 18-19. Four of the decisions, however, are unreported district court decisions that no not address *Kimbell Foods,* and while the one circuit court decision appears to apply *Kimbell*, it ruled that the state statues relied on by the landowners did not apply to the condemnation in question.

Two of the decisions state there is "no basis" or "no provision" in the Natural Gas Act for an award of attorney's fees. *Millennium Pipeline Co., L.L.C. v. Acres of Land, Inc.*, No. 07-CV-6511L, 2015 U.S. Dist. LEXIS 141234, *8-9 (W.D. N.Y., Oct. 16 2015); and *Williston Basin Interstate Pipeline Co. v. Property Interests, etc*., No. CV-09-167-BLG-RFC, 2010 U.S. Dist. LEXIS 130098, *9 (D. Mont. Dec. 9, 2010). These decisions recognize the Act's silence on attorney's fees and expenses—which is not in dispute and is an element of the Ranchers' claim. Neither decision, however, mentions *Kimbell Foods,* let alone explains why a *Kimbell* analysis was not made. Perhaps there was no applicable state law to adopt. In *Millenium Pipeline* it may have been because the landowner did not have an attorney and "questions

12

concerning fees and costs are not before [the court] or ripe for decision." *Millennium Pipeline Co.*, No. 07-CV-6511L, 2015 U.S. Dist. LEXIS 141234, at *2, *8.

Another of the decisions states it would not adopt North Carolina law allowing recovery of attorney's fees and expenses, but did not mention *Kimbell* or explain why it was inapplicable. *Atlantic Coast Pipeline, Inc. v. 1.51 Acres*, No. 5:18-CV-127-BO, 2021 U.S. Dist. LEXIS 27218, at *5 (E.D.N.C. Feb. 12, 2021). Also, the pipeline company cancelled the project and so there was "no taking and just compensation is not owed." *Id*. at *2-4. Another also did not mention *Kimbell*, and stated that the Virginia law relied on by the landowners only applied to takings by the State of Virgina. *Irick v. Columbia Gas Transmission Corp.*, No. 5:07-cv-00095, 2008 U.S. Dist. LEXIS 4388, *7-8 (W.D. Virg. 2008).

The lone reported district court decision ruled that two Kansas fee-shifting statutes would not be applied. *Northern National Gas Co. v. Approx. 9,117 Acres*, 114 F. Supp. 3d 1144, 1171 (D. Kan. 2015), *aff'd in part, rev'd in part sub nom. Northern National Gas Co. v. L.D. Drilling*, 862 F.3d 1221 (10th Cir. 2017). However, on appeal the Tenth Circuit examined the two statutes in detail, and after that review concluded that their terms did not fit the nature of the condemnation at issue and on that basis ruled them inapplicable. *Id.* at 1235. If Kansas statutes were not, as a matter of law, available to fill interstices of the Natural Gas Act, the appellate court would not have bothered reviewing the statutes but rather would have

13

summarily affirmed their unavailability to supply the federal rule of decision. Considering this decision, the Tenth Circuit may be aligned with the Third, Fifth, Sixth, and Eleventh Circuits in giving state law a role in Natural Gas Act compensation disputes.

**V.      The Relocation Act does not foreclose adopting a state statute that allows recovery of attorney's fees and expenses.**

WBI relies on the Uniform Relocation Assistance and Real Property Acquisition Policies Act to contend there is not a compensation gap in the Natural Gas Act. The Relocation Act was enacted in 1971. P.L. 91-646, Title I, § 101; 84 Stat. 1894 (codified at 42 U.S.C. ch. 61). Its purpose is to "establish[] a uniform policy for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken by a federal agency." 42 U.S.C. § 4621(b). The Act, as initially enacted, covered only condemnations carried out by a "Federal agency," that is, by the United States government. In 1987 it was amended to expand the definition of "Federal agency" to include "any person who has the authority to acquire property by eminent domain under Federal law." P.L. 100-17, Title IV § 402; 101 Stat. 246 (a)(1) (codified at 42 U.S.C. § 4601(1)).

The Act only applies to "displaced persons," *e.g.*, 42 U.S.C. § 4621(b)(c), defined as persons who, as a direct result of a federally authorized condemnation are either required to move from the land condemned or to move their personal property

14

from such land. 42 U.S.C. § 4601(6)(A)(i).[3] Once the WBI pipeline at issue was buried and installed, the Ranchers had unhindered access to the surface. As the party relying on the Relocation Act, WBI—which did not raise the Act as relevant until the post-trial briefing on fees and expenses—has the burden to prove the Ranchers are "displaced persons."

The Act, assuming it applies, contains a section on fees and expenses. Subsection "a" of Section 4654 provides two circumstances in which courts "shall award" landowners attorney's fees and expenses.[4] The first is where it turns out that the condemnor "cannot acquire the real property by condemnation." 42 U.S.C. § 4654(a)(1)[5]. The second is if "the proceeding is abandoned by the United States." 42

---

[3] Reprinted in the Addendum to this brief is 42 U.S.C. § 4601(6). This statute is not in the district court's record of the case and so there is not an idoc number or citation associated with it.

[4] Section 4654(a), with emphasis added, states:

> (a) **Judgment for owner or abandonment of proceedings**. The Federal court having jurisdiction of a proceeding instituted by a Federal agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if—

[5] (1) the final judgment is that the Federal agency cannot acquire the real property by condemnation; or

15

U.S.C § 4654(a)(2)[6]. In each instance, the condemnor will have unnecessarily troubled the landowner, and in each of those instances the court does not have discretion to make the award, but "shall" make it. It is mandatory. Nothing in Section 4654 nor elsewhere in the Relocation Act, however, precludes in other instances an award of attorney's fees and expenses. It does not preclude application of *Kimbell Foods* in others.

Indeed, the existence of a parallel state statute drives this point home. North Dakota Century Code Section 32-15-35 has a mandatory fee award when proceedings are withdrawn or dismissed, and this section is in the same chapter as Section 32-15-32, which is a general fee award provision. This shows that even the North Dakota Legislative Assembly did not believe that the provisions related to abandoned or dismissed proceedings addressed the general entitlement to fees contained in Section 32-15-32, and belies WBI's argument that such a provision "fills the gap" given that is not even true within Chapter 32-15 itself.

In *Kimbell*, where the Court decided whether the federal program at issue sufficiently covered the ground to avoid looking to state law for the rule of decision, it stated it needed a "congressional directive," and "absent" that directive, state law was in play. *Kimbell Foods*, 440 U.S. at 740. The Eighth Circuit understands *Kimbell* to require "specific congressional directions;" that to avoid a *Kimbell* analysis the

---

[6] (2) the proceeding is abandoned by the United States.

Appellate Case: 24-1693     Page: 25     Date Filed: 07/12/2024 Entry ID: 5412977

federal legislation must contain "sufficient direction," *United States v. Great Plains Gasification Associates*, 813 F.2d 193, 195 (8th Cir. 1987), which the Relocation Act lacks. "We presume that Congress does not hide 'fundamental details of a regulatory scheme in vague or ancillary provisions.'" *Biden v. Missouri,* 595 U.S. 87, 142 S. Ct. 647, 656 (2022) (Thomas, J., dissenting, joined by Alito, Gorsuch, and Barrett, JJ.) (citing *Whitman v. American Trucking Association*, 531 U.S. 457, 468 (2001)). The high standard that must be satisfied to keep *Kimbell* sidelined is consistent with federalism, as described in such decisions as *United States v. Yazell*, 382 U.S. 341, 352 (1966):

> Both theory and the precedents of this Court teach us solicitude for state interests . . . . They should be overridden by the federal courts only where clear and substantial interests of the National Government, which cannot be served consistently with respect for such state interests, will suffer major damage if the state law is applied.

That standard, which in this instance furthers the interests of landowners by allowing more generous state compensation laws to apply, also furthers the Relocation Act's purpose, which is to promote "the fair and equitable treatment of persons displaced" by condemnation. 42 U.S.C. § 4621(b). As such, it is untenable to construe Section 4654 to restrict, by implication no less, landowner interests. *See also* H.R. Rep. No. 91-1656 ("Uniform Relocation . . . Act of 1970"), at 2, 91st Cong., 2d Sess. (Dec. 2, 1970) ("House Rpt.") (the Relocation Act exists in part because "application of

17

traditional concepts of valuation . . . resulted in inequitable treatment for large numbers of people displaced by public action."). And if Congress intended to shield condemnations from state compensation standards and confine compensation to federal standards, it knew how to do so with the clarity required by *Kimbell* and *Great Plains*. While the Natural Gas Act's condemnation section, 14 U.S.C. § 717f(h), is silent on the subject, another section of the Act, Section 717y, which deals with converting facilities from natural gas to fuel oil, is not silent. It includes a provision directing FERC "to determine the maximum consideration permitted as just compensation under this section." 15 U.S.C. § 717y(b)(2). The Eleventh Circuit in its review of the Act's condemnation section found this language "interesting." *Sabal Trail*, 59 F.4th at 1163. Interesting because it "shows that Congress knew how to expressly designate a federal standard as the measure of compensation under the Natural Gas Act. Yet it did not do so in the context of condemnation proceedings." *Id*.

WBI cites a decision stating that the Relocation Act's legislative history supports a "restrictive reading" of the Act's Section 4654. *United States v. 410.69 Acres of Land, etc.*, 608 F.2d 1073, 1076 (5th Cir. 1979). The House Report on the bill that became the Relocation Act does state: "Ordinarily the Government should not be required to pay expenses incurred by property owners in connection with condemnation proceedings." House Rpt. No. 91-1656, at 25. The report, as well as

18

the case cited, were issued when the Act applied solely to the United States. Non-governmental actors were not, as mentioned above, at p. 14, subject to the Act until it was amended in 1987. The concern expressed in the House Report had as its sole focus "the Government," not private companies later made subject to the Act. And courts applying the Natural Gas Act have drawn a distinction between condemnations brought by the United States and those brought by private gas companies. Those companies have relied on *United States v. Miller*, 317 U.S. 369 (1943), as does WBI. WBI Brf. at 27-28. *Miller* dealt with a condemnation of land by the United States for a railroad right-of-way. The Court limited landowner compensation by holding that compensation would be governed by federal law, not state law. *Id*. at 376. But because *Miller* "concerned a condemnation by the federal government" nothing in it "expands its reach to condemnations by private entities." *Tenn. Gas*, 931 F.3d at 248. *See also Ga. Power*, 617 F.2d at 1119 (*Miller* is "not . . . controlling"). The nature of the federal interests "'differ markedly'" when a private entity institutes the condemnation. *Sabal Trail*, 59 F.4th at 1173 (quoting *Ga. Power,* 617 F.2d at 1119-20). In particular, "developing natural gas pipelines is not a function—much less an essential function—of the federal government." *Tenn. Gas*, 931 F.3d at 249. And since the federal government is not the condemnor, the federal interest in reducing eminent domain costs and avoiding being subject to different state compensation regimes is absent. *Id*. The distinction in choice of law cases

19

between those involving private litigants and those where the United States is a party is not an uncommon theme. *E.g.*, *Miree v. De Kalb Cnty.*, 433 U.S. 25, 31 (1977) (the matter "does not require decision under federal common law since the litigation is among private parties and no substantial rights or duties of the United States hinge on its outcome."); *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Parnell*, 352 U.S. 29, 33–34 (1956) (the litigation is between "private parties and does not touch the rights and duties of the United States;" federal law is not needed to govern "transactions essentially of local concern.").

Allowing private entities to wield the extraordinary power of condemnation counsels ensuring they do so in a way sensitive to the owners of land subject to condemnation. It is one thing for a property owner to have land taken by the government for a road or school or flood levee, for uses with a clear public benefit that the community can profit from, and quite another to have the land taken by a private entity to be used, yes, for a public purpose, but also for the financial gain of that private entity and the pockets of its owners and investors. The public purpose of such condemnations may be unclear to the property owner. If private companies like WBI with condemnation power wield it without ensuring landowners are made whole, disrepute will come to government programs that allow private condemnations, and support for those programs will weaken. There is a federal interest, perhaps a significant one, in ensuring that landowners, the people called on

20

to sacrifice their property, are not also required to absorb on behalf of their neighbors significant financial costs in ensuring private entities do not abuse their delegated condemnation power.

As support for its reliance on the Relocation Act, WBI cites three cases; two are unreported district court decisions by the same judge. *Atlantic Coast Pipeline, L.L.C. v. 3.13 Acres, More or Less,* No. 5:18-CV-426-BO, 2021 U.S. Dist. LEXIS 141538 (E.D.N.C. July 28, 2021); and *Atlantic Coast Pipeline, L.L.C. v. 3.92 Acres, More or Less,* No. 5:18-CV-387-BO, 2021 U.S. Dist. LEXIS 5557 (E.D.N.C. Jan. 11, 2021). The third is a Circuit Court decision, *Transwestern Pipeline Co. v. 17.19 Acres*, 627 F.3d 1268 (9th Cir. 2010).

The two district court decisions concern dismissal of condemnation actions after the pipeline company cancelled its project. The decisions did not address the question here, that is, whether the Relocation Act implicitly forecloses fee-shifting due to its inclusion of a provision, Section 4654, mandating payment of fees and expenses in the two circumstances. The two decisions merely considered whether their respective facts triggered Section 4654's mandatory award. *Atl. Coast Pipeline, L.L.C.*, 2021 U.S. Dist. LEXIS 141538, at *11; *Atl. Coast Pipeline, L.L.C.*, 2021 U.S. Dist. LEXIS 5557, at *7-8. Similarly, in *Transwestern Pipeline,* where the court considered the applicability of the provision involving a proceeding "abandoned by the United States" and addressed whether it applies where the condemnor was not

21

the United States but a private entity. 627 F.3d at 1269. WBI cites no direct case law that the Relocation Act restricts landowner compensation under the Natural Gas Act.

There is even a question whether the Relocation Act is relevant; whether it has any bearing on interpreting the Natural Gas Act, which is dead silent on compensation. That silence triggers *Kimbell Foods* and policies of federalism. The entire point of the "gap filling" function as described in *Kimbell Foods* arises when courts are faced with adopting a federal rule or using state law as the federal rule when the statutory program at issue is silent, which the Natural Gas Act is. That WBI looks outside the Act to a different statutory scheme, the Relocation Act, concedes the point—that the Natural Gas Act has a gap—triggering the *Kimbell* balancing test. "[E]ven where there is related federal legislation in an area, . . . it must be remembered that 'Congress acts . . . against the background of the total *corpus juris* of the states . . . .*Wallis v. Pan Am. Petrol. Corp.*, 384 U.S. 63, 68-69 (1966) (citation omitted).

In sum, assuming federalism does not foreclose the Relocation Act's relevance and then assuming the Ranchers are "displaced persons" making the Relocation Act applicable, the Act's fee-shifting provisions do not plug the gap that is filled by North Dakota's Constitutional and statutory provisions. And nothing in the Relocation Act sets forth a sufficient congressional directive to indicate an intent to generally preclude recovery of attorney's fees and expenses in natural gas

22

condemnations undertaken by private natural gas companies, particularly since the Relocation Act was enacted to <u>benefit</u> landowners and also since Congress in one section of the Natural Gas Act directed that compensation is to be measured under federal law, but did not do so in the condemnation provision at issue.

## VI. The American Rule does not apply to condemnations under the Natural Gas Act.

WBI believes *Kimbell Foods* is inapplicable because the American Rule fills any perceived gaps in the Natural Gas Act regarding fee-shifting. The Rule normally requires each litigant to pay "his own attorney's fees, win or lose." *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 253 (2010). WBI cites case law for the proposition that the American Rule governs payment of attorney's fees and expenses in all civil litigation, and any gap in the Natural Gas Act regarding attorney's fees and expenses is filled by the Rule's limits on recovering fees and expenses. WBI Brf. at 15-17. It takes the position that because there is general federal common law prohibiting fee-shifting, that ends the discussion. However, "[c]ontroversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules." *Kimbell Foods,* 440 U.S. at 727–28. Even if there is federal common law addressing an issue, federalism is not silenced and engaging in the *Kimbell Foods* balancing test and adopting state law is not precluded. *Kimbell* applies not to just the choice between state law and fashioning federal common law, but extends to the choice "between incorporating

23

state law and applying <u>preexisting federal common law</u>." *United States v. Moore*, 931 F.2d 245, 250 (4th Cir. 1991) (citation omitted; emphasis added) "[F]or federal common law to come into play, there must exist 'a significant conflict between some federal policy or interest and the use of state law.'" *Fed. S&L Ins. Corp. v. Capozzi*, 855 F.2d 1319 (8th Cir. 1988) (quoting *Wallis v. Pan Am. Petrol. Corp*., 384 U.S. 63, 86 S. Ct. 1301 (1966)).

WBI sees fees and expenses as distinct from just compensation. WBI of course recognizes the Ranchers' right to just compensation, but to avoid paying their fees and expenses the company asserts fees and expenses fall outside of just compensation. Under North Dakota law, however, just compensation includes attorney's fees and expenses. The right to them is founded on the state's constitution, pronounced by the North Dakota Supreme Court, and codified in statute.

The opening provision of the North Dakota Constitution declares: "All individuals . . . have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing, and protecting property . . . . ." N.D. Const. art. I, § 1. This declaration of rights was in the original 1889 constitution. *Id*. at "Note." "From farming to original homesteads, it is in the blood of North Dakota landowners to be protective of their real estate. From family ties to the need for farmers to grow crops, property ownership is near and dear to those who maintain it." App. 244; R. Doc. 131, at 12.

Appellate Case: 24-1693     Page: 33     Date Filed: 07/12/2024 Entry ID: 5412977

The North Dakota Constitution also states that "[p]rivate property shall not be taken . . . for public use without just compensation . . . ." N.D. Const. art. I, § 16. Based on this "just compensation" clause, North Dakota's Supreme Court has always required as a matter of constitutional law that the property owner is "entitled to his taxable costs, **although no statute authorizes such allowance**." *Petersburg Sch. Dist. v. Peterson*, 103 N.W. 756, 759 (N.D. 1905) (emphasis added). "To hold that the owner must pay his own costs in resisting attempts to take his land against his consent . . . would nullify to a certain extent this constitutional guaranty, and result in giving him less than just compensation for his property." *Id*. Just compensation is not compensation "diminished to the extent of [the owner's] costs." *Id*. Just compensation "was designed for the benefit of the landowner, and should be construed so as to give him its benefit to the full extent." *Id*.

It is critical to place North Dakota's attorneys' fee provision into this context, in which the North Dakota Supreme Court explicitly stated that the landowners' attorney fees are a necessary part of just compensation in North Dakota because otherwise the payment of fees "would nullify to a certain extent [the] **constitutional guaranty**." *Id*.

After *Petersburg*, the North Dakota Legislative Assembly enacted North Dakota Century Code § 32-15-32, creating an explicit statutory right to fees and

Appellate Case: 24-1693    Page: 34    Date Filed: 07/12/2024 Entry ID: 5412977

costs. Chapter 32-15 of the Century Code is titled "Eminent Domain," and Section 32-15-32 states:

> The court may in its discretion award to the defendant reasonable actual or statutory costs or both, which may include interest from the time of taking except interest on the amount of a deposit which is available for withdrawal without prejudice to right of appeal, costs on appeal, and reasonable attorney's fees for all judicial proceedings. . . .

As with the constitutional provision and cases interpreting it, "[t]he purpose of the statute . . . make[s] certain that the landowner received the full 'just compensation' for his land, without diminution by attorney fees." *Bismarck v. Thom*, 261 N.W.2d 640, 647 (N.D. 1977) (Vogel, J., dissenting) (The dissent's disagreement with the majority had nothing to do with the right to attorney's fees and expenses, but rather was a disagreement over the means of determining the reasonableness of the fees.).

Section 32-15-32 has been also construed to allow an award of attorney's fees and expenses in inverse condemnation actions. *E.g.*, *Gissel v. Kenmare Twp.*, 512 N.W.2d 470, 477 (N.D. 1994). Extending the statute this way, even though the statue does not expressly refer to inverse condemnation, aligns with the state's historic policy to ensure landowner compensation is not diminished by litigation costs and fees, as does *Cass County Joint Water Resource District v. Erickson*, 918 N.W.2d 371 (N.D. 2018), which involved a condemnation by the water district. The district argued that the landowners were not entitled to attorney's fees and expenses because the amount they won at trial was less than what the district had offered to settle. *Id*.

26

at 379. They relied on *Bismarck v. Thom*, 261 N.W.2d 640. The Supreme Court disagreed, noting that the legislature had at one time rejected an amendment to Section 32-15-32 that would condition recovery of fees and expenses on the landowner receiving from the court a compensation award greater than the offer from the condemnor, and ruled that to the extent *Thom* can be read to so limit compensation under Section 32-15-32, it was overruled. *Cass Cnty. Joint Water Res. Dist.*, 918 N.W.2d at 379. *See also Gissel*, 512 N.W.2d at 476-77 (Even though the condemnor made a Rule 68 settlement offer to the landowners, and the ultimate award did not exceed the offer, the landowners were nonetheless entitled to their fees and costs. Section 32-15-32 trumped the rule of procedure.). The *Cass County* Court, in addition to refusing to restrict application of Section 32-15-32, approved the district court's award for expert witness expenses even though the lower court found the expert's testimony "deficient" and did not rely on it to determine property value. *Cass Cnty. Joint Water Res. Dist.*, 918 N.W.2d at 381. This ruling was a muscular expression of judicial support for full compensation.

North Dakota's protection of landowners is also reflected in relatively recent legislative activity. One was the reaction to the 2018 *Cass County* decision and the other was reaction to the decision in *Kelo v. City of New London*, 545 U.S. 469 (2005).

Following the *Cass County* decision, various water authorities and associations attempted to amend Section 32-15-32 to condition recovery of landowner fees and expenses on obtaining an award higher than the condemnor's offer. 2019 H. Bill 1207 Legislative History, Hrg. before H. Judiciary Ctte. (Jan. 21, 2019, *available at* https://www.legis.nd.gov/files/resource/66-2019/library/hb1207.pdf ("2019 Leg. Hist."). Even proponents of the amendment recognized that Section 32-15-32 is to ensure the landowner does not have a compensation award diminished by the expense of the very proceeding by which his land is taken.[7] The Legislative Assembly refused to amend the law, leaving the existing law and landowner-favored policy in place. Even the N.D. Department of Transportation opposed the amendment. *See* Test. of Mark Gaydos, Envt'l and Transp. Servs. Dir., ND Dept. of

---

[7] *E.g.*, Test. of D. DeKrey, Gen. Mgr., Garrison Diversion Conservancy Dist., 2019 Leg. Hist, at p. 89 ("The current eminent domain law seeks to make the landowner 'whole', allowing a landowner to recover the value of an easement as well as the landowner's attorneys fees and costs incurred engaging in eminent domain litigation as part of the process to make them whole."); Test. of T. Norgard, (attorney for "a number of water entities across the state"), 2019 Leg. Hist., at pp. 57, 102 ("The concept behind the statutory attorney fee award is to make the landowner whole. If a landowner needs to hire an attorney because their land is being taken by eminent domain, the landowner would not be made whole unless they can recover the $40,000-$100,000 that the landowner spends litigating the value of the taking. As such, the current North Dakota Century Code allows a landowner to request an award of reasonable attorneys fees from a court post-trial, regardless of whether the landowner had been offered more than that by the project owner.")

Appellate Case: 24-1693     Page: 37     Date Filed: 07/12/2024 Entry ID: 5412977

Transp., 2019 Leg. Hist. at p.96 ("The Department recommends that the courts be able to continue to determine and award reasonable fees and costs.").

In *Kelo*, the definition of "public use," the foundation of eminent domain, was expanded to include economic development. The year after the decision, North Dakotans approved an initiated measure to amend Art. I, §16 of the state constitution. 2007 N.D. Sess. L., ch. 578. The measure restricted the scope of public uses allowed for condemnation purposes.[8]

In sum, under North Dakota law, attorney's fees and expenses are a part of just compensation. Therefore, case law cited by WBI for the proposition that the Ranchers cannot recover their attorney's fees and expenses because just compensation does not include those fees and expenses is inapt, and the reasoning of the several federal circuits that adopt state landowner compensation laws as the federal rule of decision is persuasive. WBI's position presents a clash between the American Rule and federalism. The Rule has its "roots in our common law," *Baker Botts L.L.P. v. ASARCO L.L.C.*, 576 U.S. 121, 126 (2015); federalism, however, is

---

[8] The amendment added the following to Art. I, § 16:

> For purposes of this section, a public use or a public purpose does not include public benefits of economic development, including an increase in tax base, tax revenues, employment, or general economic health. Private property shall not be taken for the use of, or ownership by, any private individual or entity, unless that property is necessary for conducting a common carrier or utility business.

Appellate Case: 24-1693     Page: 38     Date Filed: 07/12/2024 Entry ID: 5412977

embedded in the marrow of our constitutional framework. *See, e.g.*, *Alden v. Maine*, 527 U.S. 706, 730 (1999).

## VII.   Applying *Kimbell Foods* requires adopting North Dakota law.

### A.   Introduction.

"Controversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules;" state law can be adopted as the rule of decision. *Kimbell Foods*, 440 U.S. at 727–28. This choice of law principle is a feature of the nation's foundational preference for local law. "National action has always been regarded as exceptional in our polity, an intrusion [on state law] to be justified by some necessity, the special rather than the ordinary case." *Ga. Power*, 617 F.2d at 1116 (citing Wechsler, *The Political Safeguards of Federalism: The Role of the States in the Composition and Selection of the National Government*, 54 Colum. L. Rev. 543, 544-45 (1954)). *See also Tenn. Gas*, 931 F.3d at 252-53 ("[C]onsiderations of federalism militate in favor of adopting state law as the federal rule of decision" unless "state law conflicts significantly with any federal interests or policies.").

"The political logic of federalism . . . supports placing the burden of persuasion on those urging national action." *Id.* (citation omitted). Where there is doubt in choice of law decisions, "'the courts should use state law.'" *Id*. (quoting Mishkin*, The Variousness of "Federal Law:" Competence and Discretion in the*

Appellate Case: 24-1693     Page: 39     Date Filed: 07/12/2024 Entry ID: 5412977

*Choice of National and State Rules for Decision*, 105 U. Pa. L. Rev. 797, 814 n.64 (1957)). "[A] tie would go to state law." *Id.*

The preference for state law is heightened in real property matters, regarding which the Supreme Court "has consistently held that state law governs . . . unless some other principle of federal law requires a different result." *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363 (1977). "'The great body of law in this country [regarding real property] is found in the statutes and decisions of the state.'" *Id.* (quoting *Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 155 (1944)). And condemnations of real property interests are questions "of property law," *Ga. Power*, 617 F.2d at 1126, particularly in North Dakota where the value of the property taken, the just compensation owed, includes the attorney's fees and expenses incurred by the property owner in the condemnation process. *Supra* at Section VI. (citations omitted).

> **B.    The *Kimbell* factors.**

Whether to adopt state law or to fashion or apply a nationwide federal rule is a matter of judicial policy dependent upon a variety of considerations condensed into a three-part analysis. *Kimbell Foods*, 440 U.S. at 728-29.

<u>First Factor</u>. The first factor is whether the federal program requires uniformity. *Id.* at 728. Absent a "significant threat to identifiable federal policy or interest, . . . 'there is no federal interest in uniformity for its own sake.'" *Fed. S&L*

31

*Ins. Corp.*, 855 F.2d at 1325 (citation omitted). The Third Circuit determined that a nationally uniform rule for landowner compensation was unnecessary. *Tenn. Gas*, 931 F.3d at 252-55. It reasoned that "the United States is not a party here—or in [Natural Gas Act] condemnation proceedings generally—so the federal interest in a nationally uniform rule is relatively weak." *Id*. at 251. "Second, because property rights are traditionally an area of state concern, the federal interest in a nationally uniform rule for property valuation is especially weak." *Id*. The logic of this applies to attorney's fees and expenses. Third, the Act "contemplates state participation in multiple ways, further undermining the case for a nationally uniform rule of compensation . . . ." *Id.* at 252. The Act allows condemnation actions to be brought in state court, it exempts certain intra-state gas distribution activities, and it does not prohibit states from regulating natural gas companies involved in interstate activities. *Id. See also Fed. Power Com. v. Hope Nat'l Gas Co.*, 320 U.S. 591, 610 (1944) (the Act was drafted to "'complement and in no manner usurp State regulatory authority.'"). Fourth, Fed. R. Civ. P. 71.1 provides whatever nationwide uniformity is needed in condemnation actions, *Tenn. Gas*, 931 F.3d at 252, and the fact the paragraph "L" of Rule 71.1 exempts condemnations from Civil Rule of Procedure 54(d) ("Costs; Attorney Fees"), further indicates that uniformity is unnecessary. *Id*. Fifth, an argument that different state rules of compensation would cause landowners to receive different payouts was rejected because the first *Kimbell*

factor is not about fairness. *Id*. And to the extent that adopting state law as the compensation standard "might cause differences in costs to licensees—and therefore differences in rates to consumers—the Natural Gas Act's rate-setting mechanism can account for that." *Sabal Trail*, 59 F.4th at 1171.

Second Factor. The second *Kimbell* factor is whether application of state law would frustrate specific objectives of the federal program. 440 U.S. at 728. "[T]he primary practical problem that led to the passage of the [Natural Gas] Act was the great economic power of the pipeline companies as compared with that of communities seeking natural gas service." *Sunray Mid-Continent Oil Co. v. Federal Power Comm'n*., 364 U.S. 137, 143(1960). Thus, the Act's "primary aim . . . was to protect consumers against exploitation at the hands of natural gas companies." *Fed. Power Com.*, 320 U.S. at 610. Hence, "[n]othing in the . . . Act suggests that Congress was particularly concerned with protecting natural gas companies from the additional costs that varying state laws may impose, or even with making natural gas companies' transactions streamlined or efficient." *Tenn. Gas*, 931 F.3d at 253. The only conceivable effect that adopting state law as the measure of compensation might have is that condemnors might be required to pay more than under a federal rule, which is "merely . . .an 'ancillary issue.'" *Id.* (citation omitted).

Regarding the second factor, the Sixth Circuit stated it was "confident that incorporating state law as the federal standard will not frustrate the specific

objectives of the Natural Gas Act." *Columbia Gas*, 962 F.2d at 1198. It added that regarding the change in payments to landowners that could result under state law, "we seriously doubt that the amount would rise to the level of frustrating" the Act's objectives. *Id*. Although WBI raises a concern that consumers will suffer if the District Court is not overturned, and although it had the information available to it, it did not provide an economic analysis to support its claim. The Ranchers' attorney's fees and expenses are about $383,000, *supra*, at "Stmt. of the Case," a de minimis amount in a 12-mile-long project for 24-inch diameter pipe estimated once to cost $33.2 million and later $27.2 million. R. Doc. 001.9, at pp.6, 8. The consumers' "share" of the fees and expenses is likely pennies. And would be nothing had WBI's consideration of the Ranchers' interest been different.

Third Factor. The third *Kimbell* factor is whether application of uniform federal law would disrupt existing commercial relationships predicated on state law. 440 U.S. at 729. Commercial relationships and expectations are founded on the law existing at the time the relationship is formed. Applying a federal rule that does not rely on state law to measure compensation in condemnations brought under the Natural Gas Act by private companies would be contrary to the law established by all circuit courts that have considered the issue. It would also be contrary to the North Dakota statute that on its face governs all condemnations in the state and expressly allows recovery of fees and expenses.

Appellate Case: 24-1693     Page: 43     Date Filed: 07/12/2024 Entry ID: 5412977

Further, WBI fostered the Ranchers' expectation that this statute applied. In December of 2017, WBI sent the Ranchers a letter notifying them of the proposed project. The letter stated that the condemnation would be handled under Chapter 32-15 of the North Dakota Century Code. It stated that if the Ranchers did not agree to WBI's access to their land, it would gain access "through the applicable eminent domain (condemnation) laws," and then directed the Ranchers to state condemnation law. Stating: "Landowners' rights under North Dakota law can be found on the Internet at http://www.legis.nd.gov/cencode/t32.html using the 32 'Judicial Remedies' and the '32-15 Eminent Domain' links." *E.g.*, R. Doc. 73-1, at 3, 6. WBI initiated its relationship with the Ranchers by informing them that Chapter 32-15 would govern. The preference for state law "is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 96 (1991) (citations omitted). WBI agreed that North Dakota law applied when it communicated with the Ranchers about the applicable law, and it said nothing of the URA having application. But having set the appropriate expectations with the Ranchers that North Dakota law applies, WBI now whistles a new tune to this Court in its most recent attempt to avoid its legal obligations.

### C. *Kimbell* Summary

Federalism creates a "'presumption favoring adoption of state law as the federal rule.'" *Tenn. Gas*, 931 F.3d at 246 (quoting *Ga. Power*, 617 F.2d at 1116 n.6). *See also id.* at 250. The Third Circuit (*Tennessee Gas*), Fifth Circuit (*Georgia Power*), Sixth Circuit (*Columbia Gas*), and Eleventh Circuit (*Sabal Trail*) have applied *Kimbell Foods* to adopt state law as the standard by which landowner compensation is measured in condemnations by private entities. These decisions are persuasive. WBI has made no compelling argument for the Eighth Circuit to part with its sister circuits.

## <u>Conclusion</u>

The District Court's judgment should be affirmed.

Dated this 12th day of July, 2024.

/s/ Derrick Braaten
Derrick Braaten (ND #06394)
Charles Carvell (ND #03560)
**BRAATEN LAW FIRM**
109 North 4th Street, Suite 100
Bismarck, ND 58501
701-221-2911
derrick@braatenlawfirm.com
charles@braatenlawfirm.com

*Attorneys for Defendants-Appellees*

36

## Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7) because it contains 8977 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in fourteen (14) point Times New Roman font.

Dated: July 12, 2024

*/s/ Derrick Braaten*
Derrick Braaten

*Attorney for Defendants-Appellees*

Appellate Case: 24-1693    Page: 46    Date Filed: 07/12/2024 Entry ID: 5412977

## Circuit R. 28A(h) Certification

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 28A(h), a version of the brief in non-scanned PDF format. I hereby certify that the file has been scanned for viruses and that it is virus-free.

Dated: July 12, 2024

*/s/ Derrick Braaten*
Derrick Braaten

*Attorney for Defendants-Appellees*

38

## Certificate of Service

The undersigned hereby certifies that on July 12, 2024 an electronic copy of the Brief of Appellees was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system, and as all participants in this case are registered CM/ECF users, service of the Brief will be accomplished by the CM/ECF system.

Dated: July 12, 2024

*/s/ Derrick Braaten*
Derrick Braaten

*Attorney for Defendants-Appellees*